R. E. KRUG (Plaintiff) Appellant,

v.

VILLAGE OF MARY RIDGE, a Municipal Corporation (Defendant) Respondent.

No. 29031.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1954.

Kerth, Thies & Schreiber and Dalton W. Schreiber, Clayton, for appellant.

L. L. Bornschein, Clayton, for respondent.

HOUSER, Commissioner.

In this action R. E. Krug, a property owner, seeks a declaratory judgment invalidating Ordinances Nos. 27, 35 and 54 of the Village of Mary Ridge, and an injunction to prevent their enforcement against him. The circuit court found the issues against plaintiff and for defendant village and entered judgment against plaintiff on all issues, following which plaintiff has brought the matter before this court for review.

Ordinance No. 27 purports to be a zoning and building code.

Ordinance No. 35, amending Ordinance No. 27, establishes a new Commercial District "C" covering an extension of the village boundaries and prohibiting trailer courts in the new district (where plaintiff's property is located).

Ordinance No. 54 undertakes to license, tax and regulate hotels, motels and tourist courts within the Village of Mary Ridge.

The petition challenges the validity of Ordinance No. 54 on the ground that the village lacks the authority, right and power to license, tax and regulate hotels, motels and tourist courts. Ordinances Nos. 27 and 35 are attacked on the ground that they were not properly adopted in accordance with the notice and hearing requirements of § 89.050 relating to zoning. (All citations of chapters and section numbers in this opinion refer to RSMo 1949, V.A. M.S., unless otherwise indicated.) Ordinances Nos. 27, 35 and 54 are assailed on the ground that the yeas and nays of the members of the board of trustees voting on their adoption were not entered upon the journal, as required by § 80.110. The answer of the village concedes the essential facts and raises the legal issues above indicated.

The Village of Mary Ridge is a municipal corporation in St. Louis County organized under the laws pertaining to towns and villages (Chap. 80). Plaintiff owns a tract of land which is located therein and on which he operates a motel, which is a business in the nature of a hotel, catering to those tourists who travel by motor vehicles. At the time he commenced the operation of this business, and at the time of the purported adoption of Ordinance No. 27 on May 1, 1950, the corporate limits of the village did not include the property on which the motel is located. Ordinance No. 35, which subjected plaintiff's property to the zoning regulations of the village and prohibited trailer courts in the district in which plaintiff's motel is located, purports to have been adopted on March 5, 1951. Ordinance No. 54 recites that it was passed and approved on September 8, 1953.

The Board of Trustees of the Village of Mary Ridge at all times pertinent to this litigation consisted of five members. The trustees choose a chairman from among their number. Section 80.060.

The journal of the proceedings of the board of trustees on the dates of the purported adoption of Ordinances Nos. 27, 35 and 54, respectively, recites the following:

*May 1, 1950:* "The meeting came to order at 8:00 P.M. with H. E. Bealler presiding. The following trustees were present: H. E. Bealler; R. J. Eise; J. E. Holdinghaus; K. G. Eise; W. D. Story. * * * Bill No. 27 was read for the second time and accepted by the board. The following vote is recorded: H. E. Bealler, blank; R. J. Eise, for; J. E. Holdinghaus, for; K. G. Eise, for; W. B. Story, for. There were no dissenting votes. Bill No. 27 is hereafter known as Ordinance No. 27."

*March 5, 1951:* "The following trustees were present: H. Bealler, K. Eise, J. Holdinghaus, R. J. Eise, W. B. Story. Bill No. 35 was read for the second time. The following vote was recorded: K. Eise, for; J. Holdinghaus, for; R. Eise, for; W. Story, for. Bill No. 35 will hereafter be known as Ordinance No. 35."

*September 8, 1953:* After showing that the trustees present were. H. Bealler, E. Holdinghaus, B. Smallwood, A. Campbell and O. Saab the record continues: "Bill No. 54 was read by O. Saab. * * * Vote to be taken on Bill No. 54. Motion to take a vote on Bill 54, by E. Holdinghaus, second

by A. Campbell. Motion passed. Vote recorded as follows: Smallwood—for; Saab—for; Campbell—for; Holdinghaus—for. Bill passed, becoming Ordinance 54."

The first question is whether the Village of Mary Ridge, organized under Chapter 80, has the power to regulate, license and tax hotels, motels and tourist courts.

Incorporated villages possess no powers other than those granted by the lawmaking power of the state either in express terms or by necessary implication. Town of Knox City v. Thompson, 19 Mo. App. 523; Town of Trenton v. Clayton, 50 Mo.App. 535; City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539; Petition of City of St. Louis, Mo.Sup., 266 S.W.2d 753.

Section 80.090 enumerates 39 separate grants of legislative power to the boards of trustees of towns and villages. Specific authority is therein granted to license, tax and regulate a number of different named occupations and businesses, but hotels, motels and tourist courts are not mentioned therein. It is therefore clear that the village has no power to impose a *license tax* on hotels, motels and tourist courts because of § 71.610, which is applicable to villages, Village of Beverly Hills v. Schulter, 344 Mo. 1098, 130 S.W.2d 532, and which provides:

"No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute."

The village claims that it has the authority to regulate this type of business pursuant to para. (40) of § 80.090 and under its general police power. Paragraph (40), supra, authorizes boards of trustees of villages "To pass such other bylaws and ordinances for the regulation and police of such town and commons thereto appertaining as they shall deem necessary, not repugnant to and contrary to the laws of the state." It has been held that this paragraph is a grant of the general police power of the state. Town of Orrick v. Akers, 109 Mo.App. 662, 83 S.W. 549; Village of Green City v. Holsinger, 76 Mo.App. 567. This grant authorizes the village to enact all ordinances, not repugnant to the laws of the state, promoting the public health, safety, morals or welfare, which are necessary to carry into effect the 39 specific grants of power contained in § 80.090. Said para. (40), however, may not be construed so as to further enlarge the powers of the village, see Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, and is necessarily referable and limited to the specific grants of power contained in the preceding 39 paragraphs.

By para. (10) of § 80.090 the village is empowered "To prevent the introduction and spreading of contagious diseases". By para. (12) of § 80.090 the village has power "To prevent and extinguish fires". The regulatory features of Ordinance No. 54 are clearly referable to these express powers, in that they are confined to the protection of the public health and the prevention of fire. Sections IX to XII, both inclusive, require iron fire escapes, red lights and signs, ropes and fire extinguishers and prohibit the storage of inflammable material. Sections XIII to XVI, both inclusive, require adequate ventilation, proper plumbing, water closets, washrooms, sanitation, clean towels, bedding, etc. In the necessary exercise of the police power under para. (40), supra, carrying into effect the specific powers granted in paras. (10) and (12), supra, the village had the power to adopt the regulatory provisions to which we have referred, 37 Am.Jur., Mun.Corps. § 309, p. 962; Annotations: Tourist or Motor Courts, 115 A.L.R. 1399; 22 A.L.R.2d 774, unless these sections are repugnant or contrary to existing state laws on the subject.

Sections 315.240 and 315.250 provide for the inspection of tourist camps by the state

division of health and authorize the division to make rules and regulations governing their cleanliness, sanitation, and water supply. Plaintiff has failed to show any conflict between Ordinance No. 54 and §§ 315.240 and 315.250 or any rules and regulations promulgated by the state division of health pursuant thereto, and we find none.

Sections 315.010 to 315.180, both inclusive, provide a comprehensive state code for the state licensing and regulation of hotels. The provisions and language of Ordinance No. 54 and § 315.010, et seq. are so nearly identical that it appears that the ordinance was modeled upon the statute. The only substantial differences between the two are as follows: (1) the ordinance requires iron fire escapes on hotels, etc., in excess of *two* stories high whereas § 315.080 applies the requirement to hotels more than *three* stories in height; (2) the ordinance requires ropes in each room of hotels, etc., not over *two* stories high whereas § 315.090 applies the requirement to hotels not over *three* stories in height; and (3) the ordinance requires chemical fire extinguishers in the hallway of each floor of hotels, etc., whereas § 315.110 applies the requirement to every 2,000 square feet or less of floor area on each floor. Although the ordinance provides additional regulation in that it requires more than the state law requires, it is not in conflict with the statute but is merely supplementary thereto. The ordinance does not permit what the state law prohibits, nor prohibit what the state law permits, and the statute does not limit the requirement for all cases to its own prescriptions. The provisions of the ordinance relating to the protection of the public health and safety are not inconsistent with the provisions of the state law and both may coexist in harmony. Brotherhood of Stationary Engineers v. City of Louis, Mo. App., 212 S.W.2d 454; Vest v. Kansas City, 355 Mo. 1, 194 S.W.2d 38; State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S.W.2d 809

We therefore conclude that while the village had the power to adopt Sections IX to XII, both inclusive, and Sections XIII to XVI, both inclusive, of Ordinance No. 54 relating to sanitation, cleanliness, and the prevention and extinguishment of fires, it had no power to adopt Sections I, V, VI, VII and VIII thereof pertaining to license fees.

The next question is whether Ordinances Nos. 27, 35 and 54 are void because in their adoption the yeas and nays were not entered upon the journal. Section 80.110 provides:

"* * * no bill shall become an ordinance unless on its passage a majority of all the members of the board of trustees vote therefor, and the *yeas and nays be entered upon the journal;* * * *."

The italicized requirement is mandatory, Village of Beverly Hills v. Schulter, supra, 130 S.W.2d loc. cit. 537, and a vote is not a vote until the yeas and nays are recorded. Frago v. City of Irondale, Mo.Sup., 263 S.W.2d 356; Steiger v. City of Ste. Genevieve, 235 Mo.App. 579, 141 S.W.2d 233; Village of Beverly Hills v. Schulter, supra, 130 S.W.2d loc. cit. 532; City of New Franklin ex rel. Lynch-McDonald Const. Co. v. Edwards, Mo.App., 23 S.W.2d 235; State ex rel. Barkwell v. Trimble, 309 Mo. 546, 274 S.W. 683; Monett Electric Light, Power & Ice Co. v. City of Monett, Mo., C.C.Mo., 186 F. 360.

The purpose of the statute requiring the yeas and nays to be entered on the journal is to afford and enforce publicity as to the votes of the individual members of the governing board of a municipal corporation upon matters coming before them for their official action, Steiger v. City of Ste. Genevieve, supra, 141 S.W.2d loc. cit. 236, and to fix upon each member "'the precise share of responsibility which he ought to bear, and that by such an unequivocal record that he shall never be able to deny either his participation or the character of his vote.'" Village of Beverly Hills v. Schulter, supra, 130 S.W.2d loc. cit. 537. Since in each instance the yeas of four of the five members of the board of trustees (a clear majority of all of the

members of the board) were entered upon the journal, and since one No vote would not have affected the final result, are we to invalidate the ordinances for failure of the journal to reflect the activity of the fifth trustee, namely, the chairman, H. E. Bealler? It should be pointed out that the chairman of the board of trustees of a village is not a mere presiding officer with the power to vote only in case of a tie (as in the case of the mayor of the fourth class city, § 79.120). He is entitled to vote on all measures which come before the board, except that in filling vacancies on the board the chairman has no vote unless there is a tie. Section 80.230. Section 80.110 clearly indicates that all of the members of the board of trustees are entitled to vote on the passage of ordinances. Chairman Bealler was recorded present on roll call at the beginning of each of the three meetings in question. Since the record of the vote on the passage of the bill in each instance contains no reference to Chairman Bealler, what are we to conclude? Either Chairman Bealler absented himself from the meeting prior to the taking of the vote, or he was present and declined to vote, or he voted and by inadvertence or neglect the clerk failed to record his vote. We cannot presume that he absented himself prior to the vote, or that he remained in the meeting but declined to vote. If he was present and voted No, the nays have not been entered upon the journal as required. (It might be argued that if he had been present and had voted No the vote would have been 4 to 1 for passage, so that the net result would have been the same. We cannot say, however, that if Chairman Bealler had been present, participating in the discussion which preceded the vote, the other four would have voted for the measure. If he had actively opposed the passage of the bill it is conceivable that he might have persuaded his fellow board members to vote against it.) If he was present and voted Yes the yeas have not been entered upon the journal. It should be noted that in the minutes of one of the meetings (May 1, 1950) the journal recites that "there were

no dissenting votes." This clearly indicates that there were no nay votes to record, but the question remains unanswered and we cannot tell from the minutes whether Chairman Bealler absented himself, declined to vote or voted Yes on the proposition. As the minutes now stand it is impossible to fix upon Chairman Bealler "the precise share of responsibility which he ought to bear" for the final result in the passage of the three ordinances. If we declare that § 80.110 has been complied with we would be affording Chairman Bealler a "chance to escape definite proof as to whether he voted" on the ordinances, which would violate the purpose of the requirement that the yeas and nays be entered upon the journal. Village of Beverly Hills v. Schulter, supra, 130 S.W.2d loc. cit. 537. We hold that the yeas and nays were not entered on the journal, and that as a consequence Ordinances Nos. 27, 35 and 54 are void.

In this circumstance there is no occasion to pursue the further question whether Ordinances Nos. 27 and 35 are void for failure to comply with § 89.050, requiring notice and public hearing before zoning regulations become effective.

For the reasons stated it is the recommendation of the Commissioner that the judgment of the circuit court be reversed and the cause remanded with directions to enter judgment in accordance with the views expressed in this opinion.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions to enter judgment in accordance with the views expressed in this opinion.

RUDDY, Acting P. J., BENNICK, J., and DAVID A. McMULLAN, Special Judge, concur.