VILLAGE OF BIG LAKE, Missouri, A Missouri Municipality, Appellant,

v.

BNSF RAILWAY COMPANY, INC., and Missouri Highways and Transportation Commission, Respondents.

No. WD 74613.

Missouri Court of Appeals, Western District.

Aug. 28, 2012.

Application for Transfer to Supreme Court Denied Oct. 2, 2012.

Application for Transfer Denied Nov. 20, 2012.

Rex A. Sharp, for appellant.

John W. Koenig, Jr., for respondent Missouri Department of Highway and Transportation.

Douglas R. Dalgleish, for respondent BNSF Railway Company.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, KAREN KING MITCHELL, Judge and CYNTHIA L. MARTIN, Judge.

VICTOR C. HOWARD, Judge.

The Village of Big Lake, Missouri, appeals the trial court's dismissal of its petition for injunctive relief against BNSF Railway Company, Inc., and Missouri Highways and Transportation Commission (MHTC). The judgment is affirmed.

**Factual and Procedural Background**

The Village of Big Lake, Missouri (Village), is a municipality located in Holt County, Missouri. BNSF operates a rail line within the southern border of the Village. MHTC constructed and now regulates and maintains Missouri Highway 111 along and through the southern border of the Village.

On June 2, 2011, the Village filed a petition for injunctive relief against BNSF and MHTC alleging that over fifteen years, BNSF raised the height of its track in and around the Village and that MHTC raised Highway 111 at the intersection of the highway and the rail line without complying with the Village's Model Floodplain Management Ordinance and section 389.660, RSMo 2000, regarding the drainage of railroad right-of-ways and roadbeds. The National Flood Insurance Program of the United States of America requires, as a condition precedent to the purchase of flood insurance, that municipalities adopt a substantially identical form of the Model Ordinance. Accordingly, the Village adopted the Ordinance in February 2000. The Ordinance requires any entity, before taking actions that might impact the flood plain within the Village, to conduct a hydrological and hydraulic study, to provide the results of the studies to the Village, and to seek the Village's express permis-

sion prior to conducting work that might have impact on the flood plain or upon any flooding conditions and consequences. Section 389.660 requires railroads operating in any county with the State

to cause to be constructed and maintained suitable openings across and through the right-of-way and roadbed of such railroad, and suitable ditches and drains along the roadbeds of such railroad, to connect with ditches, drains and watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad, except that such openings, ditches and drains shall not be required to be reconstructed by the corporation to accommodate changes in land conditions not caused by the corporation. . . .

Specifically, the Village alleged that BNSF violated the Ordinance when it:

[B]uilt up its railway bed on several occasions within the past fifteen (15) years and, most recently, in June of 2010 without notifying the Village first, without conducting a hydrological and hydraulic study that was to be provided to the Village, and without seeking the Village's approval prior to the bed buildup.

It asserted that the build-up of the railroad bed created artificial barriers that confined and held flood waters from the flood of 2010 in substantially greater amount than otherwise would have occurred causing flood damage to a vast number of properties lying within the Village. The Village also alleged that BNSF, in building up the railroad bed, failed to comply with section 389.660. Finally, the Village alleged that in raising Highway 111 at the intersection of the highway and the rail line, MHTC violated the Ordinance and contributed to the artificial construc-

tion and holding of flood waters to the detriment of the Village and its citizens.

The Village sought permanent injunction "requiring [BNSF] to lower its rail bed lying within Village limits to pre-summer 2010 levels" and "to produce a hydrological and hydraulic study in regard to the raising of its rail bed." Similarly, the Village sought permanent injunction "requiring MHTC to restore Highway 111 within the Village at the junction of [BNSF's] tracks to its conditions and height before the artificial raising of said tracks in 2010, to supervise and regulate [BNSF] insuring compliance with the Model Ordinance, [and] to supervise and regulate [BNSF] in regard to Mo. Rev. State § 389.660."

BNSF filed a motion to dismiss arguing that the Village's claims were preempted by section 10501 of the Interstate Commerce Commission Termination Act of 1995 (ICCTA), 49 U.S.C. 10501(b). It also asserted that the claims were barred by the statute of limitations. Likewise, MHTC filed a motion to dismiss arguing that it was immune from liability, the Village did not have authority to enforce its municipal ordinance against it, and the Village lacked standing.

After hearing arguments on the motions, the trial court entered judgment in favor or BNSF and MHTC, dismissing the Village's petition. This appeal by the Village followed.

### Standard of Review

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *City of Lake St. Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010) (internal quotes and citation omitted). The court reviews the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be

adopted in that case." *Id.* (internal quotes and citation omitted). It treats the plaintiff's averments as true and liberally grants the plaintiff all reasonable inferences. *Id.* The court will not weigh the creditability or persuasiveness of the facts alleged. *Id.* Appellate review of a trial court's grant of a motion to dismiss is *de novo. Id.*

### Claims Against BNSF

In point one, the Village claims that the trial court erred in dismissing its claims against BNSF based on the ICCTA's preemption of the Ordinance and section 389.660. The preemption doctrine is rooted in the Constitution's Supremacy Clause, which states that "the laws of the United States ... shall be the supreme law of the land state to the contrary notwithstanding." U.S. CONST. art. VI. *See Emerson v. Kansas City S. Ry. Co.,* 503 F.3d 1126, 1128 (10th Cir.2007). State law is preempted by federal law when Congress (1) expressly defines the extent of preemption, (2) regulates an area so pervasively that an intent to preempt the entire field may be inferred, or (3) enacts a law that directly conflicts with state law. *Friberg v. Kansas City S. Ry. Co.,* 267 F.3d 439, 442 (5th Cir.2001). Preemption analysis "starts with the assumption that historic police powers of the States are not to be superseded by ... Federal Act unless that is the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)(internal quotes and citation omitted). Thus, the overriding principle that should guide any preemption analysis is whether Congress intended to preempt state law. *CSX Transp., Inc. v. Ga. Public Serv. Comm'n,* 944 F.Supp. 1573, 1581 (N.D.Ga.1996). "The intent of Congress to expressly preempt state law is 'primarily discerned from the language of the preemption statute and the statutory framework surrounding it.' " *Id.* (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

With the goal of fostering competition within and deregulating the railroad industry, Congress enacted the Interstate Commerce Commission Termination Act of 1995. *Rushing v. Kansas City S. Ry. Co.,* 194 F.Supp.2d 493, 498–99 (S.D.Miss.2001); *CSX Transp.,* 944 F.Supp. at 1583. The ICCTA vests the Surface Transportation Board (STB) with exclusive jurisdiction over "transportation by rail carriers" and "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State." 49 U.S.C. § 10501(b). "Transportation" is expansively defined to include "property ... of any kind related to the movement of passengers or property, or both, by rail." 49 U.S.C. § 10102(9). The ICCTA further provides an express preemption clause:

> Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b)(2). "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transp.,* 944 F.Supp. at 1581.

As the agency authorized by Congress to administer the ICCTA, the STB is uniquely qualified to determine whether state or local law should be preempted by the ICCTA. *Emerson,* 503 F.3d at 1130; *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 642 (2nd Cir.2005). In addressing the preemptive scope of the ICCTA, the STB has recognized two broad

categories of state and local actions that are categorically preempted regardless of the context or rationale for the action: (1) "any form of state or local permitting or preclearance, that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the [STB] has authorized" and (2) "state or local regulation of matters directly regulated by the [STB]—such as the construction, operation or abandonment of rail lines...." *Pere Marquette Hotel Partners, L.L.C. v. United States,* 2010 WL 925297, *5 (E.D.La. 2010), and *Emerson,* 503 F.3d at 1130 (quoting *CSX Transp., Inc.-Petition for Declaratory Order,* 2005 WL 1024490, at *2-*4 (Surface Transp.Bd. May 3, 2005)). *See also Adrian & Blissfield R. Co. v. Village of Blissfield,* 550 F.3d 533, 540 (6th Cir.2008). Likewise, several courts recognize that the ICCTA preempts most preconstruction or preclearance permit requirements imposed by states and localities. *Green Mountain R.R. Corp.,* 404 F.3d at 642 (citing example cases). For example, the Ninth Circuit concluded that the ICCTA preempted state and local environmental regulations requiring a railway to submit to a permitting process before making repairs and improvements on its track line. *City of Auburn v. United States Government,* 154 F.3d 1025, 1030–31 (9th Cir.1998). Because these two categories of state regulation would directly conflict with exclusive federal regulation of railroad, the "preemption analysis is addressed not to the reasonableness of the particular state or local action, but rather to the act of regulation itself." *CSX Transp.,* 2005 WL 1024490, at *3. *See also Adrian & Blissfield R. Co.,* 550 F.3d at 540.

In its petition, the Village claimed that BNSF's buildup of its railway bed that prevented floodwaters from receding violated the Ordinance and section 389.660.

Certainly, a roadbed for tracks constitutes "property ... related to the movement or passengers or property ... by rail." *Pere Marquette Hotel Partners,* 2010 WL 925297, *4 ("There can be no doubt that a railroad crossing, railroad tracks, and a roadbed for track constitute 'property ... related to the movement or passengers or property ... by rail.' "). Furthermore, the construction of the roadbed is necessarily intertwined with the construction of railroad tracks and relates directly to BNSF's rail activity. The ICCTA expressly provides that the STB has exclusive jurisdiction over the "construction" of railroad tracks.

Nevertheless, the Village argues that its Ordinance and section 389.660, which address drainage and flooding, are non-discriminatory regulations enacted pursuant to the municipality's and state's police powers to protect the public health and safety and, thus, excused from the ICCTA's broad preemptive scope. For state or local actions that are not categorically preempted, the ICCTA preemption analysis requires a factual assessment of whether the action would have the effect of preventing or unreasonably interfering with railroad transportation. *Adrian & Blissfield R. Co.,* 550 F.3d at 540; *CSX Transp.,* 2005 WL 1024490, at *3. Specifically, for a state or local regulation not categorically preempted to be a proper exercise of police power, the regulation must not (1) discriminate against rail carriers or (2) unreasonably burden rail carriage. *Norfolk S. Ry. Co. v. City of Alexandria,* 608 F.3d 150, 160 (4th Cir.2010); *CSX Transp.,* 2005 WL 1024490, at *4. "Electrical, plumbing and fire codes, direct environmental regulations enacted for the protection of the public and safety, and other generally applicable, nondiscriminatory regulations and permit requirements would seem to withstand preemption."

*Green Mountain R.R. Corp.*, 404 F.3d at 643.

Congress, however, has "made no blanket exception for a state's police power when describing the ICCTA's preemptive scope." *A & W Properties, Inc. v. Kansas City S. Ry. Co.*, 200 S.W.3d 342, 347 (Tex. App.2006). *See also Pere Marquette Hotel Partners*, 2010 WL 925297, at *6. "Instead, where cases have made reference to a state's police power in the course of ICC-TA preemption analysis, the premise for the discussion is inevitably that the state retains its traditional police power in terms of public health and safety *except* where the state's actions regulate rail transportation." *A & W Properties*, 200 S.W.3d at 347 (emphasis in original)(citing example cases).

The Ordinance and statute at issue in this case fall into the two broad categories of state and local actions that are categorically preempted by the ICCTA. The Ordinance is a form of local permitting or preclearance process requiring BNSF to conduct a hydrological and hydraulic study, provide the results to the Village, and obtain a permit from the Village before constructing a line within the southern border of the Village. Section 389.660 requiring suitable openings, ditches, and drains through and along roadbeds involves the construction of a railroad bed over which the STB has exclusive jurisdiction pursuant to section 10501(b) of the ICCTA. "[T]he congressional intent to preempt this kind of state and local regulation is explicit in the plain language of the ICCTA and the statutory framework surrounding it." *City of Auburn*, 154 F.3d at 1031. Since the Ordinance and statute fall within the categories of action that are per se preempted, no further factual inquiry is necessary. The Ordinance and section 389.660 are, therefore, preempted by the ICCTA. *See, e.g., Pere Marquette Hotel*

*Partners*, 2010 WL 925297, at *5–6 (claims alleging negligent design and construction of railroad crossing and roadbed that caused flooding related directly to construction of railroad tracks over which the STB has exclusive jurisdiction and were preempted by the ICCTA); *Maynard v. CSX Transp., Inc.*, 360 F.Supp.2d 836, 842–43 (E.D.Ky.2004)(nuisance claims alleging that drainage of railroad side tracks and their foundation was inadequate related to the railroad's construction and operation of the side tracks and were expressly preempted by the ICCTA); *A & W Properties*, 200 S.W.3d at 347 (action partly based on state statute to compel railroad to rebuild a culvert in roadbed to prevent flooding was expressly preempted by ICCTA). The trial court properly dismissed the Village's claims against BNSF. The point is denied.

## Claims Against MHTC

■ In its remaining points on appeal, the Village claims that the trial court erred in dismissing its claim for injunctive relief against MHTC for violation of the Ordinance. The trial court did not state the basis for dismissal of the claim against MHTC. Accordingly, the appellate court presumes that the dismissal was based on the grounds stated in the motion to dismiss and will affirm if the dismissal was appropriate on any such grounds. *Robinson v. Hooker*, 323 S.W.3d 418, 421 (Mo. App. W.D.2010).

In its motion to dismiss, MHTC argued that the Village did not have the power to enforce the Ordinance against it. Article IV, section 29 of the Missouri Constitution provides for the establishment of MHTC and sets forth its power. "The highways and transportation commission shall have authority over all state transportation programs and facilities as provided by law." Section 227.030, RSMo 2000, provides that

MHTC shall supervise and control the construction and maintenance of the state highway system.

■ The Village alleged in its petition that it is an incorporated village and derives its authority under section 80.090, RSMo 2000, and section 246.271, RSMo Cum.Supp.2011, to enforce the Ordinance against MHTC. "Incorporated villages possess no powers other than those granted by the lawmaking power of the state either in express terms or by necessary implication." *Krug v. Village of Mary Ridge,* 271 S.W.2d 867, 870 (Mo.App.1954). "Section 80.090 enumerates thirty-nine separate grants of legislative power to the board of trustees of towns and villages." *Id.* Specifically, authority is granted to "pass bylaws and ordinances to prevent and remove nuisances," section 80.090(1), to "open, clear, regulate, grade, pave or improve the streets and alleys of such town," section 80.090(34), and to "pass such other bylaws and ordinances for the regulation and police of such town and commons thereto appertaining as they shall deem necessary, not repugnant to and contrary to the laws of the state," section 80.090(40). Subsection 40 authorizes a village to enact all ordinances, not repugnant to the laws of the state, promoting the public health, safety, morals or welfare, which are necessary to carry into effect the thirty-nine specific grants in section 80.090 but may not be construed to further enlarge the powers of the village. *Krug,* 271 S.W.2d at 870. Section 246.271 authorizes a village to construct and operate a county or municipal levee system to protect the life, safety and property of the residents of the village from damage and injury due to flood waters.

■ Nothing in section 80.090 or section 246.271 supports enforcement of the Village's Ordinance against the MHTC. The MHTC is an executive department of the state government. *State ex rel. Mo. Highway & Transp. Comm'n v. Dierker,* 961 S.W.2d 58, 60 (Mo. banc 1998). The state is not to be considered as within the purview of a statute, however general and comprehensive the language of such act may be, unless an intention to include it is clearly manifest, as where it is expressly named herein, or included by necessary implication. *Carpenter v. King,* 679 S.W.2d 866, 868 (Mo. banc 1984); *State ex rel. Askew v. Kopp,* 330 S.W.2d 882, 888 (Mo.1960). This is especially true "where prerogatives, rights, titles or interests of the state would be divested or diminished." *Kopp,* 330 S.W.2d at 888. "The rule reflects the notion that the state is a unique entity in our society as the reservoir of the power and rights of all people." *Carpenter,* 679 S.W.2d at 868. "Narrowly construing the general provisions of a statute in favor of the state serves to preserve the state's sovereign rights and protect its capacity to perform necessary governmental functions." *Id.*

There is no clear indication that the legislature intended that MHTC must comply with the Ordinance in constructing Highway 111 at the intersection of the highway and the rail line. In section 227.030, the legislature granted to MHTC the general supervision and control over the construction and maintenance of the state highway system without any requirement that it comply with local ordinances involving floodplain management. Moreover, the powers given to a village in section 80.090 and section 246.271 to prevent and remove nuisances, to regulate the streets and alleys of the village, or to construct a levee system do not include authority to regulate the construction of a state highway. The language of the statutes does not support enforcement of the Ordinance against the MHTC. The trial court properly dismissed the Village's

claim against the MHTC. The points are denied.

The judgment is affirmed.

All concur.