# IN THE COURT OF APPEALS OF IOWA

No. 24-0509
Filed January 9, 2025


**IOWA NORTHERN RAILWAY COMPANY,**
Plaintiff-Appellee,

**vs.**

**FLOYD COUNTY BOARD OF SUPERVISORS and CERRO GORDO COUNTY BOARD OF SUPERVISORS, acting as Trustees for JOINT DRAINAGE DISTRICT NOS. 6 AND 56,**
Defendants-Appellants.
_____


Appeal from the Iowa District Court for Floyd County, Colleen Weiland, Judge.


A joint drainage district appeals the writ of mandamus prohibiting it from undertaking remedial action on a railroad embankment aimed at improving surface water drainage. **AFFIRMED.**


Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellants.

Kimberly P. Knoshaug of Lewis, Webster, Van Winkle & Knoshaug, L.L.P., Des Moines, for appellee.


Heard by Schumacher, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A joint drainage district appeals the writ of mandamus prohibiting it from boring a drainpipe through a railroad embankment to increase surface water drainage in an adjacent culvert. The sole question on appeal is whether federal law preempts the remedial action on the embankment. Because the planned improvement affects railroad transportation under the unique facts of this case, the ICCTA expressly preempts the joint drainage district from undertaking it. We therefore affirm.

**I. Background Facts and Proceedings.**

This appeal involves competing interests of two parties central to Iowa's agricultural economy. The plaintiff, Iowa Northern Railway Company (Iowa Northern), is a class III short line railroad that operates around 253 miles of track in this state. It is one of the many small, local freight railroads that help connect towns and ports that would otherwise be inaccessible to larger, national railroad networks. *See* Matthew C. Donahue, Note, *Federal Railroad Power Versus Local Land-Use Regulation: Can Localities Stop Crude-by-Rail in Its Tracks?*, 74 Wash. & Lee L. Rev. Online 146, 178 (2017). The defendant, Joint Drainage District Nos. 6 and 56 (JDD), is part of the system of drainage districts that help property owners convert wetlands to productive farmland. *See Bd. of Water Works Trs. of Des Moines v. Sac Cnty. Bd. of Supers.*, 890 N.W.2d 50, 54 (Iowa 2017). Draining farm soil increases field access and land value, reduces farm labor and fuel consumption, and lessens the wear and tear on farming equipment. *See* Nathan Vos, Note, *Agricultural Drainage and the Des Moines Water Works Lawsuit*, 22 Drake J. Agric. L. 109, 123 (2017).

The dispute centers on a portion of Iowa Northern's main line that runs near Nora Springs on the boundary of Floyd and Cerro Gordo Counties.[1] Its tracks run along a twenty-foot embankment and over a bridge that bypasses West Drive. A natural waterway runs parallel to West Drive, about fifteen to twenty feet to its south. The waterway flows east towards the Shell Rock River, passing through the railroad embankment via a four-foot by six-foot stone box culvert. The culvert was constructed in the 1870s and extended with concrete in 1944. No significant maintenance has been performed on it since. A drainage main constructed in 1918 handles drainage near the tracks. Aside from replacing the drainage tile in 1976, there has been no other major repair or improvement to the main.

In 2011, an adjacent landowner complained about the drainage. An engineering study conducted in February 2014 described the main as in poor condition but opined that the capacity appeared to provide adequate drainage with good surface relief. The study explored three options for improving drainage and recommended repairing the existing structures. After two public meetings, JDD rejected the engineer's recommendation to repair the existing structures and adopted a plan for improvement that requires installing a new culvert or pipe through the railroad embankment. Iowa Northern objected to the planned improvement, favoring the option recommended in the engineering study, which did not require any incursion into the embankment. Although JDD modified its plan for improvement several times, the parties never reached an agreement on how to improve drainage.

---

[1] The Floyd County Board of Supervisors and Cerro Gordo County Board of Supervisors act as trustees for JDD.

In May 2019, Iowa Northern petitioned for a writ of mandamus to prevent JDD from implementing its intended improvements on the railroad embankment. After a trial in March 2023, the district court concluded that federal law preempts JDD's planned improvements. It issued a writ of mandamus directing JDD to stop the installation.

**II. Scope and Standard of Review.**

This is an appeal of a mandamus action, which is tried in equity. Iowa Code § 661.3 (2019). Thus, our review is de novo. *See* Iowa R. App. P. 6.907; *Den Hartog v. City of Waterloo*, 847 N.W.2d 459, 461 (Iowa 2014). "We give weight to the district court's fact-findings but are not bound by them." *Hawk Eye v. Jackson*, 521 N.W.2d 750, 752 (Iowa 1994). "The district court's decision to issue a writ of mandamus involves the exercise of discretion." *Koenigs v. Mitchell Cnty. Bd. of Supers.*, 659 N.W.2d 589, 592 (Iowa 2003). Because preemption requires interpreting federal law, the court reviews the district court's legal conclusions for correction of errors at law. *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 643 (Iowa 2019).

**III. Discussion.**

In 1995, Congress enacted the Federal Interstate Commerce Commission Termination Act (ICCTA) to preempt economic regulation of railroads by the states. *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 914 N.W.2d 273, 280 (Iowa 2018). The ICCTA created the Federal Surface Transportation Board (FSTB) and gave it exclusive jurisdiction over railroad transportation and the construction or operation of railroad tracks, among other areas. *See* 49 U.S.C. § 10501(b). The ICCTA also

provides that its remedies "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.*

Only one Iowa case has considered preemption under the ICCTA. *See Griffioen*, 914 N.W.2d 273. The question in *Griffioen* was whether the ICCTA preempted property owners' state-law claims for damages caused by the design and operation of railroad bridges that failed during a catastrophic flood. *Id.* at 277. Surveying cases interpreting the ICCTA, our supreme court observed the statute "can preempt traditional common-law damage causes of action." *Id.* at 283–84. It also found that the ICCTA appears to protect railroads from tort liability for actions taken to preserve their own transportation facilities. *Id.* at 284. On this basis, it concluded that the ICCTA preempted the property owners' state-law claims for damage caused by design and operation of railroad bridges. *Id.* at 277.

The district court largely relied on *Griffioen* in concluding that the ICCTA expressly preempts the JDD from pursuing its improvement plan.[2] *See id.* at 281 n.2 (noting that implied preemption was not at issue on appeal and stating that the ICCTA "has express preemptive language").[3] JDD tries to distinguish *Griffioen* because it involved "a state-law tort claim requir[ing] second-guessing of a railroad's operation and management of its own rail lines as opposed to other

---

[2] The district court bolstered its conclusion by analyzing whether the ICCTA impliedly preempts JDD's improvement plan. *See Griffioen*, 914 N.W.2d at 291 (Appel, J., dissenting) ("Implied preemption arises only when the intent of Congress to occupy the entire field is 'clear and manifest.'" (citation omitted)).

[3] JDD argues there is a presumption against preemption. But "when a statute contains an express preemption clause, the Supreme Court has highlighted that 'we do not invoke any presumption against pre-emption.'" *Griffioen*, 914 N.W.2d at 281 (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).

activities." *Id.* at 278 (holding that such claims are preempted by the ICCTA). In contrast, JDD argues this dispute involves Iowa Northern's statutory duty "to build and construct or rebuild and reconstruct [a] necessary culvert . . . so as not to obstruct, impede, or interfere with the free flow of the water therein." Iowa Code § 468.109; *see also id.* § 468.110 (requiring a railroad company to construct improvements across its right-of-way upon receipt of notice under section 468.109).

Although the dispute in *Griffioen* involved a state-law tort claim, the holding is not limited to claims for monetary damages. As part of its analysis, the *Griffioen* court applied the test used by the Fifth Circuit in *Franks Investment Co. v. Union Pacific Railroad*, 593 F.3d 404, 406 (5th Cir. 2010) (en banc). "The [*Franks*] test focuses on whether the legal requirement at issue relates to rail transportation, as opposed to something else with only incidental effects on rail transportation."[4] *Griffioen*, 914 N.W.2d at 286. Under the *Franks* test, "laws, ordinances, *and* common-law damage actions challenging where and when railroads placed their railcars on their transportation lines or how they constructed those lines are generally preempted." *Id.* (emphasis added); *see also id.* at 283–84 (noting that the ICCTA can preempt common-law actions for damage "*as well as state statutes that would regulate railroad transportation*" (emphasis added)).

This dispute involves constructing an improvement along Iowa Northern's main line. While the aim of the improvement is regulating the flow of surface water

---

[4] The ICCTA's broad definition of "transportation" includes any railroad property, facilities, instrumentalities, or services "related to the movement of . . . property . . . by rail." 49 U.S.C. § 10102(9).

rather than economic regulation of the railroad, its construction would directly affect Iowa Northern's track and the operation of its main line.[5]  Under these facts, JDD's improvement plan relates to rail transportation and is preempted by the ICCTA. *See id.* at 279 ("The bridges at issue with respect to Plaintiffs' claims are . . . inextricably intertwined with the railroad Defendants' tracks, which affects rail transportation." (alteration in original)); *see also Oregon Coast Scenic R.R., LLC v. Oregon Dep't of State Lands*, 841 F.3d 1069, 1074 (9th Cir. 2016) ("[T]rack maintenance and repair are essential to providing transportation over a railway."); *Texas Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012) (holding that a city grading ordinance and requirement that roads be paved in concrete were expressly preempted by the ICCTA insofar as the roads supported railroad transloading and thus local road regulations effectively managed railway economic decisions); *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 642 (2d Cir. 2005) (noting that the FSTB, which is "uniquely qualified to determine whether state law should be preempted" by the ICCTA, has ruled that "state and local permitting or preclearance requirements (including environmental requirements) are preempted because by their nature they unduly interfere with interstate commerce" (cleaned up)); *City of Auburn v. United States*, 154 F.3d 1025, 1031 (9th Cir. 1998) (noting that environmental permitting regulations amount to economic regulation if they prevent a carrier "from constructing, acquiring, operating, abandoning, or discontinuing a line"); *CSX Transp., Inc. v.*

---

[5] JDD claims that construction will not impede railroad operation.  Because the record shows that Iowa Northern will not allow any trains to operate during construction due to its impact on track stability and the safety risks inherent with it, the action relates to railroad transportation.

*City of Plymouth*, 92 F. Supp. 2d 643, 659 (E.D. Mich. 2000) ("To the extent the state law at issue here is viewed as requiring the railroad to undergo substantial capital improvements, such as upgrading its class of track, relocating its yards, or upgrading speed along its 'wyes,' it is preempted by the ICCTA . . . ."), *aff'd*, 283 F.3d 812 (6th Cir. 2002); *Vill. of Big Lake v. BNSF Ry. Co.*, 382 S.W.3d 125, 130 (Mo. Ct. App. 2012) (holding that a state statute "requiring suitable openings, ditches, and drains through and along [railroad] roadbeds" was preempted by the ICCTA).

Because the JDD improvement plan is preempted by the ICCTA, we affirm.

**AFFIRMED.**