# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3898

_____

Thomas Tubbs, Trustee of theThomas Tubbs Revocable Trust and Individually;
Dana Lynn Tubbs, Trustee of the Dana Lynn Tubbs Revocable Trust and Individually

*Petitioner*s

v.

Surface Transportation Board; United States of America

*Respondent*s

BNSF Railway Company; Massman Construction Company

*Intervenor*s

_____

Petition for Review of an Order of the
Surface Transportation Board

_____

Submitted: September 21, 2015
Filed: December 28, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Flood waters from the Missouri River heavily destroyed the family farm of Thomas and Dana Lynn Tubbs in 2011. The Tubbses attribute the total loss to BNSF Railway Company's maintenance of a railway embankment running across their farm. The Surface Transportation Board ("Board") concluded that the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10501(b), (ICCTA) preempts the Tubbses' state-law claims. We deny the Tubbses' petition for review.

I. *Background*

The Tubbses own a 550-acre farm near the Missouri River. BNSF owns and operates a railroad track over an earthen embankment that bisects the Tubbses' farm. Because of its height, the embankment blocks the free flow of water across the landscape even though BNSF maintains drainage conduits through the embankment to avoid excess buildup of water. On occasion, BNSF has raised the embankment to prevent water from spilling over the tracks and interrupting rail traffic. But as the height of the embankment increased, BNSF did not provide additional drainage capacity or buttress the structural foundation of the embankment to support the increased volume of dammed water. In anticipation of the 2011 flood season, BNSF elevated the embankment. Unfortunately, record-setting flood waters breached the freshly raised embankment later that summer. The resulting rapid flow of water washed away the fertile soil on the Tubbses' farm.

The Tubbses filed suit in state court against BNSF and its contractor, Massman Construction Company, seeking damages for state-law torts, including trespass, nuisance, negligence, inverse condemnation, and statutory trespass. The state court stayed the litigation and permitted the Tubbses to seek clarification from the Board with respect to whether the ICCTA preempts their state-law claims.

Upon review, the Board concluded that the ICCTA preempted the Tubbses' state-law claims but that they retained a federal claim based on BNSF's alleged violation of federal regulations under the Federal Railroad Safety Act (FRSA). The

Board's preemption analysis noted that "[s]ection 10501(b) categorically preempts states or localities from intruding into matters that are directly regulated by the Board," and that "state and local actions may be preempted . . . if they would have the effect of unreasonably burdening or interfering with rail transportation." The Board reasoned that the Tubbses' state-law tort claims are preempted because "they would have the effect of managing or governing rail transportation." The Board followed precedent from a number of courts that have applied the unreasonable-burden-or-interference analysis. Additionally, the Board rejected the Tubbses' contention that preemption applies only when there is a federal equivalent of the preempted state-law remedy. Finally, the Board concluded that section "10501(b) does not preempt the FRSA regulations on drainage under railroad tracks. [The Tubbses'] tort claims based on alleged violations by BNSF of these regulations are therefore also not preempted by § 10501(b)."

The Tubbses appealed. We have jurisdiction to review the Board's final order pursuant to 28 U.S.C. §§ 2321, 2342(5).

## II. *Discussion*

This appeal raises two questions—one of law and one of fact. The first is whether the Board's unreasonable-burden-or-interference test is the appropriate test for determining if the Tubbses' state-law claims are preempted under the ICCTA. The second is whether the facts support state-law claims that would unreasonably burden or interfere with rail transportation.

### A. *Standard of Review*

This case comes to us as a petition for review of the decision of the Board; it is not an appeal from a district court. "Because Congress has entrusted the Board with interpreting and administering the [ICCTA], in reviewing its decisions we ask only whether they are based on a permissible construction of the statute." *MidAmerican Energy Co. v. Surface Transp. Bd.*, 169 F.3d 1099, 1106 (8th Cir. 1999) (quotations

and citations omitted). This review standard notwithstanding, the Tubbses assert that we should review the Board's order de novo. For support, they cite the Fifth Circuit's opinion in *Franks Investment Co. LLC v. Union Pacific Railroad Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc). But this case, unlike *Franks*, involves an appeal directly from an administrative decision of the Board. *See id.* at 406. Instead, because the ICCTA "is silent or ambiguous with respect to the specific issue [of testing for as-applied preemption], the question for [this] court is whether the [Board's] answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

The Board's unreasonable-burden-or-interference test is fact intensive. The scope of our review is therefore "quite narrow." *City of Lincoln v. Surface Transp. Bd.*, 414 F.3d 858, 860–61 (8th Cir. 2005). "As long as the Board's findings of fact are supported by substantial evidence in the record as a whole, we will accept its findings and the reasonable inferences it drew from them." *Id.* (citation omitted).

B. *The Tubbses Failed to Properly Challenge the Board's Use of the Unreasonable-Burden-or-Interference Test for As-Applied Preemption*

The ICCTA provides that

The jurisdiction of the Board over—

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

-4-

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). When determining whether the ICCTA preempts the Tubbses' state-law claims as applied, the Board asked whether those claims "would have the effect of unreasonably burdening or interfering with rail transportation." In doing so, "[t]he Board analyze[d] the facts and circumstances of the case." Several of our sister circuits have approved of this test in cases of as-applied preemption. *See, e.g.*, *Franks Inv. Co. LLC*, 593 F.3d at 414; *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 103 (2d Cir. 2009); *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 220–21 (4th Cir. 2009); *Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 540 (6th Cir. 2008); *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 254 (3d Cir. 2007); *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1133 (10th Cir. 2007).

An appeal challenging the Board's test must show that the test employed is not "based on a permissible construction of the statute." *MidAmerican Energy Co.*, 169 F.3d at 1106 (quotations and citations omitted). The Tubbses have failed to present that argument on appeal. Instead, they argue that "'without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against [ ] preemption.'" (Quoting *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 252 (8th Cir. 2012).) In short, the Tubbses propose a different test for preemption that requires a one-to-one replacement of state-law claims with federal claims. We decline to consider the Tubbses "better test" because they have not shown that the Board's test constitutes an impermissible construction of the ICCTA. The Tubbses's challenge of the unreasonable-burden-or-interference test thus fails.

Moreover, the Tubbses cannot prevail under their own test because they have not established that they have no federal remedies remaining. Indeed, they embrace

the surviving tort claims that are "based on alleged violations by BNSF of [the FRSA] regulations."

Finally, the Tubbses argue that the Board has prevented them from bringing a claim for just compensation under the Fifth and Fourteenth Amendments. In short, the Tubbses claim that the Board has foreclosed their ability to bring a claim based on the Takings Clause of the Constitution and thus affected a taking. We are not persuaded. The loss of a cause of action, which is not a vested interest until it is reduced to a final judgment, is too speculative to constitute a taking. *See Jones Truck Lines, Inc. v. Whittier Wood Products Co.* (*In re Jones Truck Lines, Inc.*), 57 F.3d 642, 651 (8th Cir. 1995). Additionally, the Tubbses have not explained how their right to just compensation protects the particular state-law remedies they seek. Nor have they explained why their remaining federal remedies—including their claim that BNSF is liable under the FRSA—are insufficient to protect their constitutional rights.

In sum, we will not overturn the Board's use of the unreasonable-burden-or-interference test for as-applied preemption under the ICCTA because the Tubbses have failed to properly challenge it.

C. *The Tubbses' State-Law Claims Unreasonably Burden or Interfere with Rail Transportation*

The Tubbses argue that their "state law claims arising from a common law duty do not regulate rail traffic" but instead provide "a remedy for wrongs that have already occurred." In short, the Tubbses disagree with the factual finding of the Board that their state-law claims will unreasonably burden or interfere with rail transportation. Because our review of factual findings is "quite narrow," we must determine whether the Board's findings are "supported by substantial evidence in the

record as a whole," accepting "the reasonable inferences [the Board] drew" therefrom. *City of Lincoln*, 414 F.3d at 860–61 (citations omitted).

In this case, the Board found that the state-law claims would unreasonably burden or interfere with rail transportation because they are "based on alleged harms stemming directly from the actions of a rail carrier, BNSF, in designing, constructing, and maintaining an active rail line—actions that clearly are part of 'transportation by rail carriers.'" The Board noted that if state-law claims directed at such an "integral part of . . . rail transportation" were not preempted, they would interfere with BNSF's "ability to uniformly design, construct, maintain, and repair its railroad line." These findings are supported by the Tubbses' pleadings. They assert that BNSF is liable because "[a]t the time of the 2011 flood, the embankment had only 134 feet of drainage openings in its five mile span" when "the height and length of the embankment required ten times that amount to accommodate anticipated flooding." Further, they argue that the applicable standard of care required BNSF to "stabilize the structure by widening the base of the embankment to accommodate [the] additional height . . . [or] create . . . additional drainage openings to reduce the damming effect." The Board could reasonably infer that the Tubbses' state-law claims would unreasonably burden or interfere with rail transportation based on their assertion that BNSF's conduct fell below its standard of care by not meeting required width and drainage specifications for the embankment.

Before the Board, the Tubbses relied on two cases for legal support that preemption was not appropriate. The Board correctly distinguished both cases. First, in *Emerson*, "[t]he Landowners claim[ed] that . . . improperly discarded railroad ties and vegetation debris impeded the flow of water through the drainage ditch and culvert system adjacent to their properties." 503 F.3d at 1128. The Tenth Circuit held that "no ICCTA provision gives the [Board] authority to dictate how the Railroad should dispose of detritus or maintain drainage ditch vegetation. Nor would the state remedies adversely affect the economic aspects of the Railroad's operations subject

to [the Board's] control." *Id.* at 1132. The factual differences between *Emerson* and this case are significant. Where *Emerson* dealt with the improper disposal of railroad ties and vegetation debris, this case deals with the structural standards applicable to an earthen embankment on which a railroad runs, standards that would have a significant impact on the construction and maintenance of a rail line.

Second, the Board distinguished *Guild v. Kansas City Southern Railway Co.*, 541 F. App'x 362, 368 (5th Cir. 2013). In that case, the Fifth Circuit held that a state-law tort claim was not preempted because the railroad had not provided evidence in support of its "assertions that the [plaintiffs'] negligence claim would somehow affect rail transportation." *Id.* at 368 (citation omitted). There is no similar lack of evidence in this case. The Tubbses advance a standard of care that would, in essence, subject construction of elevated railroad embankments to state regulation for height, width, and drainage via negligence actions.

In sum, we will not overturn the Board's factual determination that the Tubbses' state-law claims would unreasonably burden or interfere with rail transportation because that determination is supported by substantial evidence in the record.

### III. *Conclusion*

Accordingly, we deny the Tubbses' petition for review of the decision of the Surface Transportation Board.

_____