# IN THE SUPREME COURT OF IOWA

No. 16–1462

Filed June 22, 2018

**MARK GRIFFIOEN, JOYCE LUDVICEK, MIKE LUDVICEK, SANDRA SKELTON,** and **BRIAN VANOUS,** Individually and on Behalf of All Others Similarly Situated,

Appellants,

vs.

**CEDAR RAPIDS AND IOWA CITY RAILWAY COMPANY, ALLIANT ENERGY CORPORATION, UNION PACIFIC RAILROAD COMPANY,** and **UNION PACIFIC CORPORATION,**

Appellees.

---

Appeal from the Iowa District Court for Linn County, Paul D. Miller, Judge.

Property owners appeal a district court's order granting judgment on the pleadings to railroads based on federal preemption. **AFFIRMED.**

Russell G. Petti of Law Offices of Russell G. Petti, La Canada, CA; Sam Sheronick of Sam Sheronick Law Firm, P.C., Cedar Rapids; C. Brooks Cutter and John R. Parker Jr. of Cutter Law P.C., Sacramento, CA; Edward A. Wallace and Amy E. Keller (until withdrawal) of Wexler Wallace LLP, Chicago, IL; and Eric J. Ratinoff of Eric Ratinoff Law Corp., Sacramento, CA, for appellants.

Alice E. Loughran of Steptoe & Johnson LLP, Washington, DC; Charles T. Hvass Jr. of Donna Law Firm P.C., Minneapolis, MN; and Bruce

E. Johnson of Cutler Law Firm, P.C., West Des Moines, for appellees Union Pacific Railroad Company and Union Pacific Corporation.

Timothy R. Thornton and Leah Ceee O. Boomsma of Briggs and Morgan, P.A., Minneapolis, MN; and Kevin Collins and Sarah J. Gayer of Nyemaster Goode, P.C., Cedar Rapids, for appellees Cedar Rapids and Iowa City Railway Company and Alliant Energy Corportion.

**MANSFIELD, Justice.**

This case is yet another outgrowth from the terrible flooding that struck our state a decade ago. Property owners in Cedar Rapids have sued the owners of certain railroad bridges across the Cedar River, alleging that their misguided efforts to protect those bridges from washing out worsened the effects of the flooding for other property owners. We must decide whether the property owners' state-law damage claims against the railroad bridge owners are preempted by the Federal Interstate Commerce Commission Termination Act (ICCTA). *See* 49 U.S.C. § 10501(b) (2006). The ICCTA confers "exclusive" jurisdiction on the Federal Surface Transportation Board over "transportation by rail carriers" and over the "construction" or "operation" of rail tracks or "facilities." *Id.* The ICCTA expressly provides "exclusive" remedies "with respect to regulation of rail transportation" and expressly preempts any other "remedies provided under Federal or State law." *Id.*

After careful review of the ICCTA and authorities interpreting it, we conclude this federal law does indeed preempt the property owners' action alleging that the railroads' design and operation of their railroad bridges resulted in flood damage to other properties. Accordingly, we affirm the district court's ruling granting the defendants' motion for judgment on the pleadings.

Our decision is consistent with the federal authorities examining this question of federal law. Clearly, not all state-law tort claims involving railroads are preempted by the ICCTA. But state tort claims like the ones alleged here that involve second-guessing of decisions made by railroads to keep their rail lines open are expressly preempted by Title 49 § 10501(b) of the ICCTA. *See Tubbs v. Surface Transp. Bd.*, 812 F.3d 1141, 1144–46 (8th Cir. 2015) (quoting § 10501(b) and then concluding that it preempts

the plaintiffs' tort claims "as applied"); *Jones Creek Inv'rs, LLC v. Columbia County*, 98 F. Supp. 3d 1279, 1291–94 (S.D. Ga. 2015) (agreeing with the railroad's contention that the ICCTA "expressly preempts [the plaintiff's] state law tort claims"); *Waubay Lake Farmers Ass'n v. BNSF Ry.*, No. 12–4179–RAL, 2014 WL 4287086, at *6 (D.S.D. Aug. 28, 2014) (finding that plaintiffs' state-law tort claims "fall squarely within the express terms of the ICCTA's preemption clause"); *In re Katrina Canal Breaches Consol. Litig.*, No. 05–4182, 2009 WL 224072, at *4–6 (E.D. La. Jan. 26, 2009) (describing § 10501(b) as an "express preemption provision" and applying it to preempt plaintiffs' state-law tort claims); *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 842 (E.D. Ky. 2004) (stating that "section 10501(b) of the ICCTA expressly preempts Plaintiff's [common-law tort] claims"); *A & W Props., Inc. v. Kan. City S. Ry.*, 200 S.W.3d 342, 347 (Tex. App. 2006) (finding that there is no "blanket exception" from section 10501(b) for state-law tort claims and that "preemption is express" for the tort claims asserted by the plaintiff).

Two categories of state-law tort claims typically are not preempted by the ICCTA. One is a tort claim that challenges a railroad's activities other than the maintenance and operation of its rail lines. *See Guild v. Kan. City S. Ry.*, 541 F. App'x 362, 368 (5th Cir. 2013) (declining to find that a state-law tort claim that the defendant damaged plaintiff's private spur track by temporarily parking train cars of excessive weight on that private track was preempted); *Emerson v. Kan. City S. Ry.*, 503 F.3d 1126, 1130 (10th Cir. 2007) (finding that § 10501(b) does not preempt a claim relating to a railroad "discarding old railroad ties into a wastewater drainage ditch adjacent to the tracks and otherwise failing to maintain that ditch"); *Rushing v. Kan. City S. Ry.*, 194 F. Supp. 2d 493, 499–501 (S.D. Miss. 2001) (finding that § 10501(b) preempted tort claims relating

to the railroad's operation of its switch yard but not relating to its erection of an earthen berm outside the switch yard); *Jones v. Union Pac. R.R.*, 94 Cal. Rptr. 2d 661, 666–67 (Ct. App. 2000) (finding no preemption where there was a triable issue whether the railroad ran its engines and sound "solely to harass plaintiffs" rather than for safety reasons or "in furtherance of [defendant's] railroad operations").

A second category of claims are those relating to rail safety, where a separate, narrower preemption provision in the Federal Rail Safety Act (FRSA) applies. *See* 49 U.S.C. § 20106; *Tyrrell v. Norfolk S. Ry.*, 248 F.3d 517, 523–25 (6th Cir. 2001) (finding that the FRSA rather than the ICCTA governed a trainman's personal injury claim and the claim was not preempted); *Waneck v. CSX Corp.*, No. 1:17cv106–HSO–JCG, 2018 WL 1546373, at *4–6 (S.D. Miss. Mar. 29, 2018) (finding in a personal injury case that tort claims relating to the design and maintenance of the crossing and related rail structures were governed by the ICCTA and therefore preempted, whereas claims relating to the railroad's failure to slow the train related to rail safety, were therefore governed by the FRSA, and were not preempted).

In short, "there is nothing in the case law that supports [the] argument that, through the ICCTA, Congress only intended preemption of economic regulation of the railroads." *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1030 (9th Cir. 1998). If a state-law tort claim requires second-guessing of a railroad's operation and management of its own rail lines as opposed to other activities, and the claim does not pertain to rail safety, it is preempted by the ICCTA. Hence, after careful consideration, we conclude this tort action seeking a large sum of damages for flooding allegedly caused by the railroads' maintenance of their rail bridges is preempted. In this instance, as in many preemption cases, we do not

believe further development of the record is needed, and accordingly we affirm the district court's grant of judgment on the pleadings.

## I. Background Facts & Proceedings.

Because this case was resolved on a motion for judgment on the pleadings, we assume the truth of the facts stated in the pleadings. *See Hussemann ex rel. Ritter v. Hussemann*, 847 N.W.2d 219, 222 (Iowa 2014) ("The court should grant a party's motion for judgment on the pleadings only if the uncontroverted facts stated in the pleadings, taken alone, entitle a party to judgment."). Certain facts can also be judicially noticed. *See* Iowa R. Civ. P. 1.415. In the summer of 2008, Iowa residents experienced devastating flooding. Cedar Rapids was hit particularly hard with the worst flooding in its history. More than ten square miles were impacted by the floodwaters, and an estimated 10,000 residents were displaced by the flood.

The plaintiffs own property in Cedar Rapids. The defendants—Cedar Rapids and Iowa City Railway Company, Union Pacific Railroad Company, Union Pacific Corporation, and Alliant Energy Corporation—own railroad bridges traversing the Cedar River in Cedar Rapids. On June 10, 2008, the defendants parked railcars laden with rocks on their bridges to weigh down the bridges in an effort to keep them from washing away during the flooding. Two days later, two of the four bridges collapsed.

The fallen railcars clogged the Cedar River and therefore caused or exacerbated the damage to plaintiffs' property. The two bridges that did not collapse also caused damage when the rising water reached the railcars atop the bridges, creating a dam effect and diverting water to low-lying areas.

On June 7, 2013, the plaintiffs filed a class action petition at law in the Linn County District Court, alleging negligence, strict liability for

engaging in an abnormally dangerous or ultra-hazardous activity, and strict liability based on violations of Iowa Code sections 468.148 and 327F.2 (2009). The plaintiffs sought actual damages of $6 billion and punitive and treble damages.[1]

The defendants removed the action to the United States District Court for the Northern District of Iowa on the theory that the plaintiffs' claims were completely preempted by the ICCTA. The district court denied the plaintiffs' motion to remand, held that complete preemption applied, and dismissed the case. *Griffioen v. Cedar Rapids & Iowa City Ry.*, 977 F. Supp. 2d 903, 908–09 (N.D. Iowa 2013). The United States Court of Appeals for the Eighth Circuit reversed and remanded. *Griffioen v. Cedar Rapids & Iowa City Ry.*, 785 F.3d 1182, 1192 (8th Cir. 2015). That court reasoned,

> The absence from the ICCTA of a substitute federal cause of action that would embrace the Griffioen Group's claims leads us to conclude that Congress has not expressed the clear intent necessary to overcome the exceptionally strong presumption against complete preemption . . . .

*Id.* At the same time, the court added, "Our holding is, of course, limited to the issue of federal-question jurisdiction, and so we offer no views regarding any preemption defense that may be raised in state court." *Id.*

Following remand to the Linn County District Court, the defendants moved for judgment on the pleadings based on preemption. In its ruling on February 12, 2016, the district court granted the motion for judgment on the pleadings. The court reasoned,

> The uncontroverted facts, as stated in the pleadings, establish that the ICCTA expressly preempts the state law

---

[1]No damage figure is alleged in the petition, *see* Iowa R. Civ. P. 1.403(1), but the plaintiffs made two filings with the district court asserting that the defendants' actions caused $6 billion in damages.

claims stated by Plaintiffs. The bridges at issue with respect to Plaintiffs' claims are . . . inextricably intertwined with the railroad Defendants' tracks, which affects rail transportation. Plaintiffs, having made complaints about how the railroad Defendants loaded and positioned their rail cars; as to where and when they parked their rail cars; and as to the design, construction and maintenance of the bridges, have stated claims that go directly to rail transport regulation. . . . Plaintiffs are complaining about actions taken by the railroad Defendants that are an essential part of the railroads' operations, and that would result in Plaintiffs managing or governing the operations of the railroads. . . .

. . . .

Plaintiffs' state law claims are expressly preempted by federal law because the claims fall within the scope of the ICCTA preemption clause.

The plaintiffs appealed, and we retained the appeal.

**II. Standard of Review.**

We review a district court's ruling on a motion for judgment on the pleadings for the correction of errors at law. *Hussemann*, 847 N.W.2d at 222. "The district court should only grant the motion if the pleadings, taken alone, entitle a party to judgment." *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 633 (Iowa 2002).

**III. Analysis.**

**A. The ICCTA.** In 1995, Congress enacted the ICCTA, which abolished the Interstate Commerce Commission and created the Surface Transportation Board (STB). ICC Termination Act of 1995, Pub. L. No. 104–88, 109 Stat. 803 (codified at 49 U.S.C. §§ 10101–16106). The purpose of the ICCTA was to create "the direct and complete pre-emption of State economic regulation of railroads" and thereby deregulate the economic activity of the industry. H.R. Rep. No. 104-311, at 82, 95 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 793, 793, 807; *see also* S. Rep. No. 104-176, at 2, 5, 7 (1995) (noting that because "the Committee [was] impressed with the positive effects rail deregulation . . . had on the railroad industry,"

the bill as initially proposed would "significantly reduce[ ] regulation of surface transportation industries" and would "continue[ ] the deregulation theme" of the past several years).

To accomplish this deregulation, Congress vested the STB with exclusive regulation of rail transportation and operations, including remedies related to railway transportation. The ICCTA contains an express preemption provision:

> The jurisdiction of the Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

> "[T]ransportation" includes—
>
> (A) a locomotive, car, vehicle, . . . property, . . . instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail . . . ; and
>
> (B) services related to that movement . . . .

*Id.* § 10102(9). Railroad bridges, like railroad crossings, railroad tracks, and roadbeds for tracks, meet this statutory definition. *See Pere Marquette Hotel Partners, L.L.C. v. United States*, No. 09–5921, 2010 WL 925297, at *4 (E.D. La. Mar. 10, 2010). "[R]ailroad" as statutorily defined includes bridges. 49 U.S.C. § 10102(6)(A).

The defendants' position is that the property owners' claims are expressly preempted by the foregoing language in the ICCTA.[2] They contend that the defendants' decisions to park railcars loaded with rock on railroad bridges in order to keep those bridges open, and their prior construction of those bridges, related to the "construction" and "operation" of "facilities," as to which the STB's jurisdiction is exclusive. They maintain that allowing an Iowa district court to second-guess those decisions in an action seeking billions of dollars in damages would amount to "regulation of rail transportation."

The property owners disagree. They argue the ICCTA preempts only state laws that *directly* regulate transportation. It does not preempt state laws of general applicability that have only an *incidental* effect on transportation. They contend that the present state-law damages action falls in the latter category.

Notably, when a statute contains an express preemption clause, the Supreme Court has highlighted that "we do not invoke any presumption against pre-emption." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. ___, ___, 136 S. Ct. 1938, 1946 (2016). Instead, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.* (quoting *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 594, 131 S. Ct. 1968, 1977 (2011)). In addition, interstate rail operations have traditionally been subject to "among the most pervasive and comprehensive of federal regulatory

---

[2]Here and below, the railroads have argued only express preemption. The district court relied on express preemption in granting the railroads' motion. Thus, any question of implied preemption—preemption based on something other than 49 U.S.C. § 10501(b)—is not before us.

One can debate the proper terminology to use. Section 10501(b) has express preemptive language. When the question is the reach of that language, we believe it is one of express preemption. *See State v. Martinez*, 896 N.W.2d 737, 746 (Iowa 2017).

schemes." *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318, 101 S. Ct. 1124, 1130 (1981). Thus, such operations are not historically an area of primarily state concern.

**B. Previous ICCTA Flooding Cases.** In granting the motion for judgment on the pleadings, the district court relied primarily on a series of other flood-related cases interpreting the ICCTA. In each of these cases, the plaintiffs' tort claims were found to be preempted; federal law gave primacy to the railroads' federally protected interests in maintaining their rail lines.

For example, in *Jones Creek Investors, LLC*, the plaintiffs claimed the railroad's activities upstream caused their lake to be permeated with sediment, which led to extensive flooding of their golf course. 98 F. Supp. 3d at 1283–84. The court found the culverts at issue were "not some incidental or peripheral venture [the railroad company] undertook that was unrelated to its railway transportation services." *Id.* at 1294. Importantly, the court determined that "[a]ny state tort claims against [the railroad company] for damages resulting from this construction to its infrastructure effectively govern [the railroad company's] ability to keep its rail lines in safe, working order." *Id.* As a result, the plaintiffs' claims "stemming from the failure, construction, design, and operation of the culverts [were] preempted by the ICCTA." *Id.*

In *Tubbs*, the plaintiffs' tort claims resulting from flooding caused by the railroad having raised an embankment were found to be preempted by the ICCTA. 812 F.3d at 1145–46. The STB had concluded the state law claims would "unreasonably burden or interfere with rail transportation" and were preempted because they were "based on alleged harms stemming directly from the actions of a rail carrier . . . in designing, constructing, and maintaining an active rail line—actions that clearly are

part of transportation by rail carriers." *Id.* at 1145–46. The court found the "structural standards applicable to an earthen embankment on which a railroad runs . . . would have a significant impact on the construction and maintenance of a rail line." *Id.* at 1146. The court affirmed the STB decision because the plaintiffs' claims "would, in essence, subject construction of elevated railroad embankments to state regulation for height, width, and drainage via negligence actions." *Id.*

Similarly, in *Maynard*, the plaintiffs sought damages and injunctive relief in part for the railroad's use of a sidetrack for coal loading operations, which allegedly blocked the plaintiffs' access to their properties and caused drainage from adjoining properties onto their properties. 360 F. Supp. 2d at 837–38. In finding that the plaintiffs' common law negligence and nuisance claims were preempted, the court noted that the sidetracks were essential to the railroad's operations, and allowing the use of the sidetracks to be controlled by the plaintiffs' claims "would interfere with the movement of commerce. . . . Because it [was the railroad company's] construction and operation of the side tracks in this case which [gave] rise to Plaintiffs' claims, those claims [were] expressly preempted by the ICCTA." *Id.* at 841–42.

Likewise, in *Waubay Lake Farmers Ass'n*, the plaintiffs brought class-action common-law damage claims against a railroad, claiming its culvert beneath the railroad bed was not large enough and therefore caused flooding to various properties. 2014 WL 4287086, at *2. The court held the plaintiffs' common law claims essentially sought to "manage or govern" the railroad company's construction of its roadbed. *Id.* at *6. "Plaintiffs may not use state common law and a state statute to regulate, and indeed seek to compel, [the railroad company's] reconstruction of its culvert, roadbed, and tracks." *Id.*

Also, in *Village of Big Lake v. BNSF Railway*, the plaintiffs sought injunctive relief against the railroad's violation of a municipal floodplain management ordinance and a state law regarding drainage of railroad right-of-ways and roadbeds.  382 S.W.3d 125, 126 (Mo. Ct. App. 2012). The ordinance required any entity whose actions might impact the floodplain to conduct studies and seek the municipality's permission before taking such action.  *Id.* at 126–27.  After a flood had occurred, the municipality sued the railroad for building up its railway bed in violation of the ordinance and the state law, basing its claim on the same premise as in the instant case—that the railroad's actions increased the amount of damage that would otherwise have occurred.  *Id.* at 127.  The court found the ordinance and the statute fell into

> two broad categories of state and local actions that are categorically preempted [by the ICCTA] . . . : (1) "any form of state or local permitting or preclearance, that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the [STB] has authorized" and (2) "state or local regulation of matters directly regulated by the [STB]—such as the construction, operation or abandonment of rail lines. . . ."

*Id.* at 128–29 (second and third alterations in original) (quoting *Pere Marquette Hotel Partners*, 2010 WL 925297, at *5).

In *A & W Properties, Inc.,* a property owner sued a railroad for injunctive relief and damages on state statutory and common law theories, alleging the railroad's refusal to enlarge a culvert threatened flooding of its property.  200 S.W.3d at 343–44.  The court reasoned, "The question for this Court is whether A & W's claims and the remedies they seek involve 'regulation of rail transportation.'"  *Id.* at 351 (quoting 49 U.S.C. § 10501(b)).  The court concluded they did and found preemption.  *Id.*

In *In re Katrina Canal Breaches Consolidated Litigation*, the court found that property owners' state-law tort claims against a railroad, which arose out of the catastrophic Hurricane Katrina flooding, were preempted. 2009 WL 224072, at *1, *6. The claims were based on the railroad's alleged "negligent design and construction of roadbeds and other areas of track." *Id.* at *5. The court explained,

> The application of state law negligence principles to assess and evaluate the suitability of the design and construction of a railroad crossing, railroad tracks, and roadbed for railroad tracks qualifies as an attempt at state law "regulation" in respect to rail transportation.

*Id.*[3]

---

[3]The plaintiffs contend that another flood-related case, *Emerson*, 503 F.3d 1126, supports their position. Although *Emerson* did not find preemption, it also does not concern rail transportation and is therefore not on point. *See id.* at 1130. In *Emerson*, landowners brought a tort suit claiming that improper disposal of discarded railroad ties and vegetation debris had caused flooding of their property. *Id.* at 1128. The lawsuit, in other words, arose out of the railroad's rubbish disposal activities, not its efforts to move freight or passengers. *See id.* As the Tenth Circuit explained,

> We do not think that the plain language of this statute can be read to include the conduct that the Landowners complain of here—discarding old railroad ties into a wastewater drainage ditch adjacent to the tracks and otherwise failing to maintain that ditch. These acts (or failures to act) are not instrumentalities "of any kind related to the movement of passengers or property" or "services related to that movement." Rather, they are possibly tortious acts committed by a landowner who happens to be a railroad company. Because these acts or omissions are not "transportation" under § 10102(9), the ICCTA does not expressly preempt the generally applicable state common law governing the Railroad's disposal of waste and maintenance of the ditch.

*Id.* at 1129–30 (citation omitted).

Likewise, *Iowa, Chicago & Eastern Railroad v. Washington County*, 384 F.3d 557 (8th Cir. 2004), is not on point because it involved joint highway-rail transportation, not railroad transportation. The issue there was that a county wanted four bridges rebuilt—two carrying the highway at issue over the railroad and two carrying the railroad at issue over the highway. *Id.* at 558. The railroad did not want to bear any of the costs and sought a declaratory judgment seeking to block the state administrative proceeding on the basis of federal preemption. *Id.* The Eighth Circuit, supported by the views of the Federal Department of Transportation and the STB, concluded that the railroad's "broad ICCTA preemption argument [was] unsound and that more narrow federal preemption or supremacy issues [were] premature." *Id.* at 562. It elaborated,

These cases appear to stand for two propositions. First, the ICCTA can preempt traditional common-law damage causes of action, as well as state statutes that would regulate railroad transportation. This is consistent with United States Supreme Court precedent that express preemption of state "requirements" includes requirements imposed after-the-fact through common-law damages litigation. *See, e.g., Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324, 128 S. Ct. 999, 1008 (2008) ("[R]eference to a State's 'requirements' includes its common-law duties."); *Bates v. Dow Agroscis. LLC,* 544 U.S. 431, 439, 452, 125 S. Ct. 1788, 1795, 1803 (2005) (finding common law actions to be preempted by a provision of the Federal Insecticide, Fungicide, and Rodenticide Act that said certain states "shall not impose or continue in effect any requirements

---

Congress for many decades has forged a federal-state regulatory partnership to deal with problems of rail and highway safety and highway improvement in general, and the repair and replacement of deteriorated or obsolete railway-highway bridges in particular. ICCTA did not address these problems.

*Id.* at 561. In granting judgment on the pleadings in the instant case, the district court found *Washington County*

distinguishable because it involved bridges that intersected with highways, which is a highway safety issue that incorporates state regulations. In the case at bar, the bridges serve railroad purposes only and do not support a highway crossing for motor vehicles.

Also not on point is the recent decision of *Gordon v. New England Central Railroad*, No. 2:17–cv–00154, 2017 WL 6327105 (D. Vt. Dec. 8, 2017). There the court held that a trespass claim was not preempted, although it was a "close question." *Id.* at *10. The railroad had repaired its line using rip-rap rock. *Id.* at *3. The rip-rap was rolling into the plaintiff's property on a regular basis. *Id.* at *3–4. Thus, the case involved a direct physical invasion of the plaintiff's property by material placed by the railroad. *See id.* The court held that the plaintiff's request to have the railroad ordered "to remove the trespassing material" was not preempted, even though it might result in a brief disruption of rail service. *Id.* at *8, *10.

The key point about the *Gordon* case is that there had been a direct physical invasion of the plaintiff's property. Notably, the *Gordon* court distinguished four of the flood cases we have discussed in the main text because they did not involve "a railroad's trespass on non-railroad property." *Id.* at *9 n.3.

for labeling or packaging in addition to or different from those required under this subchapter" (quoting 7 U.S.C. § 136v (2000)); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 515, 521–22, 112 S. Ct. 2608, 2617, 2620 (1992) (determining common-law actions were preempted by a provision of the Public Health Cigarette Smoking Act of 1969 stating that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes" whose packages were labeled in accordance with federal law (quoting 15 U.S.C. § 1334(b))).  If a common-law damages action can impose a "requirement," it can also "regulate."

The Supreme Court recently noted, "As we have recognized, state 'regulation can be . . . effectively exerted through an award of damages,' and '[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' "  *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637, 132 S. Ct. 1261, 1269 (2012) (alteration in original) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 29 S. Ct. 773, 780 (1959)); *see Maynard*, 360 F. Supp. 2d at 840 ("[S]everal federal circuit and district courts . . . have consistently held that the ICCTA preempts state common law claims with respect to railroad operations."); *Pejepscot Indus. Park, Inc. v. Me. Cent. R.R.*, 297 F. Supp. 2d 326, 333 (D. Me. 2003) ("[T]his Court joins other courts in recognizing that awards of damages pursuant to state tort claims may qualify as state 'regulation' when applied to restrict or burden a rail carrier's operations."); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737 (1993) (finding that the preemptive clause in the former version of the Federal Railroad Safety Act covering any state "law, rule, regulation, order, or standard relating to railroad safety"

embraced "[l]egal duties imposed on railroads by the common law" (quoting 45 U.S.C. § 434 (repealed 1994))).

Second, the ICCTA appears to protect railroads from tort damage liability to property owners under state law when the railroads are taking action to preserve their own transportation facilities. As the district court put it here, "[I]f a railroad is acting to protect its tracks and bridges from floodwaters and to keep the interstate shipment of goods moving, those actions are protected under federal law."

The plaintiffs rely, however, on a widely used test under the ICCTA, and it is to that test we now turn.

**C. The "Reasonably Said to Have the Effect of Managing or Governing Rail Transportation" Test.** The plaintiffs urge us to follow what they call "the *Franks* test." In *Franks Investment Co. v. Union Pacific Railroad*, the plaintiffs filed a lawsuit challenging a railroad's closure of private railroad crossings that the plaintiffs had used for decades to access their lands. 593 F.3d 404, 406 (5th Cir. 2010) (en banc). The en banc Fifth Circuit found that this action invoking Louisiana property law was not preempted by the ICCTA. *Id.* at 413.

Although the railroad tried to argue its tracks were railroad facilities for purposes of the ICCTA's preemption clause, the court found this claim had been waived. *Id.* at 409. Instead, it limited the railroads to their prior argument that the crossing themselves were facilities. *See id.*

The Fifth Circuit said that "the relevant part of Section 10501(b) is its second sentence," i.e., the sentence providing that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *See id.* at 408, 410 (quoting 49 U.S.C. § 10501(b)). Thus, it found

"persuasive" a prior Eleventh Circuit decision that Congress narrowly tailored the ICCTA's preemption clause

> to displace only "regulation," i.e., those state laws that may reasonably be said to have the effect of "manag[ing]" or "govern[ing]" rail transportation, . . . while permitting the continued application of laws having a more remote or incidental effect on rail transportation.

*Id.* at 410 (quoting *Fla. E. Coast Ry. v. City of W. Palm Beach,* 266 F.3d 1324, 1331 (11th Cir. 2001)) (alterations in original). As the Fifth Circuit elaborated, "The text of Section 10501(b), with its emphasis on the word regulation, establishes that only laws that have the effect of managing or governing rail transportation will be expressly preempted." *Id.* Again, the court reiterated, "To the extent remedies are provided under laws *that have the effect of regulating rail transportation,* they are preempted." *Id.*[4]

The court found that this dispute over the opening or closing of four private rail crossings did not have the effect of managing or governing rail transportation. *Id.* at 411. At most, it "may have an incidental effect on railroad transportation." *Id.*

Notably, the court found no basis for distinguishing between a state administrative order, as had been involved in an earlier crossing case, and state common law: "In either case, preventing the railroad owner from making its own decisions regarding railroad crossings creates the same amount of potential interference with railroad operational decisions." *Id.* at 409–10.

---

[4]The plaintiffs characterize the *Franks* test as preempting state law only when it "directly" manages or regulates transportation, but this is not what the test says. To illustrate, the United States Court of Appeals for the Eleventh Circuit, which originated the test, found that a nuisance claim brought by property owners based on a railroad's construction and use of a new side track was preempted, notwithstanding the plaintiffs' contention that their claim was "not directly related to the operation and use of the side track." *Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1069 (11th Cir. 2010).

And the court distinguished its own precedent that preempted "a state law tort suit against a railroad company for allowing trains to block railroad crossings." *Id.* at 411 (citing *Friberg v. Kan. City S. Ry.*, 267 F.3d 439 (5th Cir. 2001)).  The court noted,

> It is clear that a tort suit that attempts to mandate when trains can use tracks and stop on them is attempting to manage or govern rail transportation in a direct way, unlike a state law property action regarding railroad crossings.

*Id.*

The *Franks* test has been applied in other cases.  *See, e.g., Ezell v. Kan. City S. Ry.*, 866 F.3d 294, 299–300 (5th Cir. 2017) (finding that the ICCTA preempted state-law personal injury negligence claims based upon the amount of time a train blocked a crossing); *Delaware v. Surface Transp. Bd.*, 859 F.3d 16, 21 (D.C. Cir. 2017) (holding that the ICCTA preempted a Delaware law prohibiting the nonessential idling of locomotives in residential areas at night); *Guild*, 541 F. App'x at 366–67 (holding that the ICCTA preempted a claim seeking to force a railroad to add a switch to its tracks but not a claim requesting damages for the railroad's use of the plaintiffs' own private spur line); *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 806–08, 813 (5th Cir. 2011) (concluding that the ICCTA preempted a state-law negligence-per se personal injury claim based upon violation of Mississippi's antiblocking law but not a failure to warn claim); *Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097–98 (9th Cir. 2010) (determining that the ICCTA preempted state antipollution regulations limiting pollution produced by idling trains); *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218–20 (4th Cir. 2009) (holding that the ICCTA did not preempt the enforcement of voluntary contractual agreements entered into by railroads or their predecessors); *Adrian & Blissfield R.R. v. Village of Blissfield*, 550 F.3d 533, 538, 541 (6th Cir.

2008) (finding the ICCTA did not preempt a state law requiring a railroad to pay for sidewalks and pedestrian crossings); *City of Siloam Springs v. Kan. City S. Ry.*, No. 12–5140, 2012 WL 3961346, at *1, *3 (W.D. Ark. Sept. 10, 2012) (deciding that a condemnation action seeking an easement under a railroad bridge was preempted by the ICCTA because "the proposed trail easement contemplates structural modifications to a railroad bridge—which is unquestionably a 'facility' of KCSR"); *Murphy v. Town of Darien*, No. FBTCV136039787, 2017 WL 1656911, at *1, *4 (Conn. Super. Ct. Apr. 10, 2017) (determining the ICCTA preempted a personal injury claim predicated on the railroad's operation of a "through train on a track immediately adjacent to the platform when reasonable care required Metro–North to select an interior track away from the platform").

The *Franks* test was applied in some of the flooding cases we have already cited where state-law tort claims were preempted. *See Jones Creek*, 98 F. Supp. 3d at 1291; *Waubay Lake Farmers Ass'n*, 2014 WL 4287086, at *5–6. The STB itself has applied it. *See Tubbs*, 812 F.3d at 1143.

Contrary to the plaintiffs, we believe that the *Franks* test supports preemption here. The test focuses on whether the legal requirement at issue relates to rail transportation, as opposed to something else with only incidental effects on rail transportation. Thus, laws, ordinances, and common-law damage actions challenging where and when railroads placed their railcars on their transportation lines or how they constructed those lines are generally preempted. *See, e.g.*, *Ezell*, 866 F.3d at 298; *Delaware*, 859 F.3d at 21; *Guild*, 541 F. App'x at 366–67; *Elam*, 635 F.3d at 807; *Friberg*, 267 F.3d at 443–44; *City of Siloam Springs*, 2012 WL 3961346, at *3; *Murphy*, 2017 WL 1656911, at *4. Incidental burdens on transportation—such as the type of warnings provided or whether a

private crossing is open or closed—are usually not preempted. *See, e.g., Elam*, 635 F.3d at 814; *Adrian & Blissfield Ry.*, 550 F.3d at 541.[5]

The petition here falls into the former category. After identifying parties and grounds for jurisdiction and venue, the petition alleges that the defendants own four separate "railroad bridge[s]." Pet. ¶¶ 24–27 (June 7, 2013).[6] It then alleges that on June 10, 2008, railcars filled with rock were positioned by the defendants on those bridges. *Id.* ¶¶ 28–31. Next, it alleges that these bridges and railcars filled with rock obstructed the flow of water. *Id.* ¶¶ 32–35. Further, it alleges that the defendants "failed to build, maintain, inspect, and keep in good repair" these four bridges, and that two of the bridges collapsed on June 12, further blocking the flow of water. *Id.* ¶¶ 36–40. Lastly, it alleges that the "Defendants' actions caused flooding and/or exacerbated flooding in Cedar Rapids, Linn County, Iowa causing great and extensive property damage and other damage to Plaintiffs and all others similarly situated." *Id.* ¶ 41. These are the sum total of the plaintiffs' factual allegations.

**D. Is There a "One-Time Event" Exception to Preemption?** In addition to the *Franks* test, the plaintiffs cite a few unpublished district court cases, urging that "[e]ven where a tort action involves actual rail operations, it is not preempted by the ICCTA where the railroad's negligent activity involves a one-time event." However, after examining the plaintiffs' legal authority, we are not persuaded that such an exception exists.

---

[5]*See also MD Mall Assocs., LLC, v. CSX Transp., Inc.*, 288 F. Supp. 3d 565, 596–99 (E.D. Pa. 2017) (stating in dicta that an action to compel a railroad to install a drainage pipe was not preempted in the absence of evidence that it would interfere with railroad operations, while ruling for the railroad on other grounds).

[6]Different defendants allegedly had ownership of and responsibility for different bridges, but for purposes of this appeal, such distinctions do not matter.

These decisions did indeed involve one-time events, as tort cases typically do. Procedurally, though, they are remand decisions, where the only legal issue was whether *complete* preemption existed. Furthermore, unlike the flooding cases relied on by the district court, these cases arose out of personal injuries, not decisions by railroads to prioritize their economic interests in keeping their rail lines open and running over possible damage or economic harm to other property in Cedar Rapids.

In *Staley v. BNSF Railway*, the railroad "blocked the guarded crossing and forced motorists to use the unguarded crossing without providing adequate warnings for unseen oncoming trains." No. CV 14–136–BLG–SPW, 2015 WL 860802, at *7 (D. Mont. Feb. 27, 2015). Thus, the case centered not on the operation of trains per se, but on their operation combined with a failure to warn. *See id.* The court found *Elam* the "persuasive" precedent—i.e., the case where the court found the negligence-per se claim based on placement of the trains preempted, but found no preemption of failure to warn. *See id.* No one contends here that warnings by the defendants would have made any difference; the gravamen of the plaintiffs' petition is entirely the defendants' maintenance and operation of their rail lines across the Cedar River. *Staley* is not on point.

In *Battley v. Great West Casualty Insurance*, the court declined to find that a negligence claim against a railroad for refusing to move a train so emergency responders could get through to an accident scene was preempted. No. 14–494–JJB, 2015 WL 1258147, at *2, *4–5 (M.D. La. Mar. 18, 2015). The *Battley* case did involve train operations. *See id.* at *4. Yet, it does not bear any resemblance in the current case. The court's brief decision pointed to the "incidental and limited effect on rail transportation" of any judgment. *Id.* at *5. The case before us, by contrast,

involves not a refusal to move a train for an emergency vehicle, but the actions taken by railroads to construct and maintain four rail bridges across the Cedar River and then to seek to preserve those rail bridges by positioning rail cars full of rock on them before the flooding. The economic stakes were high, and the economic judgment being sought ($6 billion) is also high.

Finally, in *Anderson v. Union Pacific Railroad*, a personal injury action had been brought by the plaintiffs after a train derailed, allegedly due in part to poor maintenance of a railroad bridge. No. 10–193–DLD, 2011 WL 4352254, at *1 (M.D. La. Sept. 16, 2011). The court described the case as "a simple suit for personal injury damages based on state law negligence." *Id.* at *4. In declining to find complete preemption and instead remanding the case to state court, the federal court explained, "The fact that defendant may have a defense to plaintiffs' claims based on a federal law or regulation does not provide the basis for federal question jurisdiction and, therefore, does not support removal of plaintiffs' claims." *Id.*

The plaintiffs' efforts to rely on these "garden-variety tort" cases falter because, among other things, the present case is not a garden-variety tort. Rather than a personal injury claim based on a limited, discrete aspect of a railroad's operations, this is a tug-of-war over responsibility for catastrophic economic damages. The plaintiffs' claims arise out of allegations that the defendants' four rail bridges were built and maintained to suit the railroads and not Cedar Rapids property owners and, with the floodwaters coming, the defendants took a series of actions to prioritize keeping their bridges and rail lines open in lieu of preserving

the city as a whole.[7]  Imposing the liability sought by the plaintiffs on the railroads would not have an "incidental" effect but would, undoubtedly, affect the actions taken by these railroads and others with respect to their rail bridges in the future whenever flooding is possible.  That may be a desirable social policy, assuming the plaintiffs' allegations are true, but it is a policy that under the ICCTA must come from the federal government.

Along similar lines, the plaintiffs have not persuaded us that the Federal Railroad Safety Act (the FRSA) bears upon the present dispute. *See* 49 U.S.C. §§ 20101–20153 (2006 & Supp. III).  This Act was adopted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Id.* § 20101.  It authorizes a plethora of safety-related rules and regulations. *Id.* §§ 20131–20153.

Section 20106 of the FRSA provides that "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." *Id.* § 20106(a)(1).  It allows a state to "adopt or continue in force a law, regulation, or order related to railroad safety or security" subject to certain criteria. *Id.* § 20106(a)(2).  And it includes the following "[c]larification":

> Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—
>
> **(A)** has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

---

[7]The plaintiffs argue that their case is both a "garden-variety tort" and involves a "unique set of facts."  It can't be both.

**(B)** has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

**(C)** has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

*Id.* § 20106(b)(1).

Thus, by its terms, the savings clause in the FRSA does not preserve *all* state-law property-damage claims against a railroad. It merely clarifies that *the FRSA* does not preempt them. *See id.* Section 20106(b) of the FRSA therefore does not alter the preemptive force of the ICCTA. *See Maynard*, 360 F. Supp. 2d at 843 ("[T]he ICCTA is a separate and distinct statute from the FRSA.").

In reconciling the two statutes, courts have uniformly held that the FRSA deals with rail safety, and the ICCTA with economic issues relating to railroad operations and facilities. As the court explained in *Waubay Lake*, "When the state statute addresses rail safety, then courts analyze preemption under FRSA. When the state statute addresses construction or economic concerns, then courts analyze preemption under ICCTA." 2014 WL 4287086, at *4 (citations omitted) (applying ICCTA rather than FRSA preemption analysis to flood case); *see also Cannon v. CSX Transp., Inc.*, No. 84373, 2005 WL 77088, at *3–4 (Ohio Ct. App. Jan. 13, 2005) (applying ICCTA rather than FRSA preemption to homeowners' state tort claims that "excessive railway vibrations caused significant damages to their homes"). This helps explain why in the few personal injury cases cited above, courts did not find ICCTA preemption. *See Ezell*, 866 F.3d at 300 & n.6 (noting that "[i]n some cases, it may be difficult to discern whether a particular state law or claim is better characterized as an economic or safety regulation" and deciding that a negligence-per se personal injury claim based on a Mississippi antiblocking statute was

barred by the ICCTA). This is not such a borderline case. The petition challenges decisions made by the railroads regarding the construction of their bridges and the placement of trains on those bridges not because they caused a personal injury, but because they allegedly had the foreseeable effect of causing flood-related property losses.[8]

### IV. Conclusion.

For the foregoing reasons, we affirm the district court order granting judgment on the pleadings based on ICCTA preemption.

**AFFIRMED.**

All justices concur except Appel, Wiggins, and Hecht, JJ., who dissent.

---

[8]The plaintiffs also pled claims under Iowa Code sections 327F.2 and 468.147. These sections provide,

> Every railroad company shall build, maintain, and keep in good repair all bridges, abutments, or other construction necessary to enable it to cross over or under any canal, watercourse, other railway, public highway, or other way, except as otherwise provided by law, and shall be liable for all damages sustained by any person by reason of any neglect or violation of the provisions of this section.

Iowa Code § 327F.2.

> Any person who shall willfully break down or through or injure any levee or bank of a settling basin, or who shall dam up, divert, obstruct, or willfully injure any ditch, drain, or other drainage improvement authorized by law shall be liable to the person or persons owning or possessing the lands for which such improvements were constructed in double the amount of damages sustained by such owner or person in possession; and in case of a subsequent offense by the same person, the person shall be liable in treble the amount of such damages.

*Id.* § 468.148.

The plaintiffs have not briefed anything relating to section 468.148, and so we deem that claim waived for purposes of this appeal. *See In re Estate of Waterman*, 847 N.W.2d 560, 568 n.11 (Iowa 2014) ("They have not briefed that issue on appeal. We therefore deem this argument waived and need not consider it further here."). The plaintiffs' claim under section 327F.2 is preempted for the same reasons as the common law claims we have already discussed.

#16–1462, *Griffioen v. Cedar Rapids & Iowa City Ry.*

**APPEL, Justice (dissenting).**

I respectfully dissent.

The main question here is what Congress meant when it declared in the Interstate Commerce Commission Termination Act (ICCTA) that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State Law." 49 U.S.C. § 10501(b)(2) (2006). The ICCTA abolished the Interstate Commerce Commission with all its regulatory authority over rates, certificates of convenience, and gateways, and replaced the intense and detailed regulatory regime with a market-based approach.

Ordinarily, one would distinguish government economic regulation, or the legislative or quasi-legislative development of generally applicable law, from case-by-case tort law, which focuses not on economic regulation of an industry but instead on the recovery of losses caused by the harmful conduct of another. State tort law is distinct from economic regulation. The purpose of state tort law "is not to manage or govern rail transportation." *Guild v. Kan. City S. Ry.,* 541 F. App'x 362, 367 (5th Cir. 2013). While regulations protect the public interest generally, the purpose of state tort law is to provide remedies to injured parties. *See Freeman v. Grain Processing Corp.,* 848 N.W.2d 58, 69–70 (Iowa 2014) (outlining differences between common law causes of action and regulatory regimes in the pollution context).

Congress, however, expressly wished to preempt state "regulation of rail transportation." State statutes and administrative regulations regarding railroad operations in the public interest are thus expressly preempted by the ICCTA. For example, a state antiblocking statute

amounts to a "regulation of rail transportation" because it applies only to railroads and regulates the operations of railroads at railroad crossings. *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 807 (5th Cir. 2011).

But there is no express language in the ICCTA suggesting that Congress sought to preempt traditional state tort law of general application. As noted by the United States Court of Appeals for the Eleventh Circuit, "Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation." *Fla. E. Coast Ry. v. City of West Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001).

Further, courts "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947). This rule should be dispositive here. But even if ambiguity can be somehow engineered on the issue of preemption of traditional state tort law, "when the text of an express pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Freeman*, 848 N.W.2d at 76 (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77, 129 S. Ct. 538, 543 (2008)). Under current caselaw, if Congress wished to preempt state tort law under prevailing caselaw, it must use unambiguous language. It did not do so. There is no express preemption.

Beyond state law claims that directly address the economic behavior of railroads, the preemption of state tort law, if it occurs at all under the ICCTA, arises only from implied preemption. But this is an uphill road for the railroads. Implied preemption arises only when the intent of Congress

to occupy the entire field is "clear and manifest." *Lubben v. Chi. Cent. & Pac. R.R.*, 563 N.W.2d 596, 599 (Iowa 1997) (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S. Ct. 1732, 1737 (1993)). In other words, courts do not have the authority to stretch preemption outside the four corners of the congressional language absent really strong reasons that compel such judicial improvement of the statute. There is plainly no "clear and manifest" intent in the ICCTA to preempt state tort law that does not directly affect the regulation of transportation. As a result, the district court's finding of preemption should be reversed.

But there is more. Even assuming there is a basis for implied preemption of some generally applicable state tort claims, such implied preemption should arise only when the state law tort has an incidental impact on the railroad that significantly affects the manner in which the railroad conducts its economic affairs. Determining whether the incidental impacts of tort law would functionally be the equivalent of an economic regulation is generally a fact-specific undertaking. The focus of the fact-specific inquiry should be on how important the challenged conduct is to the day-to-day economic operations of the railroad. If, without the challenged conduct, the railroad can operate perfectly well with very little economic impact, then the state law claim only incidentally affects railroad operations and does not amount to a prohibited backdoor state regulation of rail transportation, and the state law lawsuit may proceed.

In determining whether the indirect or incidental impact of a state-law tort action amounts to a "regulation of rail transportation," the amount of damage caused by the alleged tortious conduct is irrelevant. Congress did not use the preemption language to impose some kind of cap on damages. That would be a far too tortured interpretation of the plain

language of § 10501(b)(2). The focus must be on the degree to which tort liability will cause a change in the economic environment under which the railroads operate in the future.

For example, in *A & W Properties, Inc. v. Kansas City Southern Railway*, 200 S.W.3d 342, 345 (Tex. App. 2006), a plaintiff sought to force a railroad to repair a culvert. The railroad in moving for summary judgment offered an affidavit that in order to make the changes required by the plaintiff, the railroad would have to spend more than half-a-million dollars, shut down the stretch of track temporarily, and operate trains at dramatically reduced speeds during various periods of construction. *Id.* at 344.

Other cases that assume that implied preemption might be available under the ICCTA require that in order for implied preemption to occur, the effect of the state claim must "unreasonably" burden or interfere with rail transportation. *Or. Coast Scenic R.R. v. Or. Dep't of State Lands*, 841 F.3d 1069, 1077 (9th Cir. 2016); *Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 530 (5th Cir. 2012); *Elam*, 635 F.3d at 805. Determining whenever a state-law tort action "unreasonably" burdens or interferes with railway transportation raises a fact question not amenable to resolution on a motion to dismiss on the pleadings. *See Elam*, 635 F.3d at 813 ("Our inquiry [into whether a state-law tort claim unreasonably burdens or interferes with railroad operations] is 'fact-based.' " (quoting *Franks Inv. Co. v. Union Pac. R.R.*, 593 F.3d 404, 414 (5th Cir. 2010))). The burden of proving that a state cause of action "unreasonably" burdens or interferes rests with the railroad. *Id.* at 813–14.

In this case, there has been no factual development on the key issue. It is conceivable, for example, that a factual record might be developed that could show that the actions taken by the railroads were not only negligent,

but entirely unnecessary even to protect the interests of the railroad. It could be, for instance, that other sensible alternatives were available that would have adequately protected the railroad's interests without causing dramatic adverse effects downstream and that the economic environment in which railroads operate would not be materially changed by the tort lawsuit. In short, it could well be that a tort result that says, "You cannot pile cars with rocks on railroad bridges during times of flooding," will not be a burden at all on future railroad operations because equally effective alternatives are available to the railroads. Even if the court were to adopt a broad view of implied preemption under the ICCTA, the plaintiffs are entitled to explore the issue further, and the motion to dismiss in this case, in my view, was improper.

I acknowledge, as I must, that there is an alphabet soup of federal authority that is less demanding in its preemption analysis under the ICCTA. Some of the authority has a run-for-the-exit quality, embracing a conclusory notion that unquantified and unexamined "burdens" of state tort law "unreasonably interfere" with railroad operations. For example, some federal authority broadly concludes that because the state law tort might impose costs that are "inextricably linked to rail transportation," preemption occurs. *Jones Creek Inv., LLC v. Columbia County*, 98 F. Supp. 3d 1279, 1293 (S.D. Ga. 2015). In my view, this approach is off the mark and imports into the ICCTA a hostility to state tort law and its underlying compensatory policies at the expense of fidelity to the actual language of the ICCTA, its purpose of providing economic deregulation, and the previously generally accepted preemption principles embraced by the United States Supreme Court.

Whether the United States Supreme Court wishes to more closely align the caselaw with congressional intent and the court's traditional

approach to preemption remains to be seen. In the absence of Supreme Court action, this case now sends a clear message to Congress, namely, that if Congress wishes to prevent preemption of nonregulatory state tort law and statutory law claims when it enacts economic deregulation, it had better state so expressly. The limitations of ordinary language in economic deregulation legislation are no longer a reliable barrier to expansive approaches to implied preemption.

For the above reasons, I would not run for the exit, but would reverse the holding of the district court.

Wiggins and Hecht, JJ., join this dissent.