# IN THE SUPREME COURT OF IOWA

No. 20–1037

Submitted March 23, 2022—Filed May 13, 2022

**THE ESTATE OF SUSAN FARRELL,** by its Administrator, Jesse Farrell, and as Representative for the Claims of JESSE FARRELL, Individually, **JESSE FARRELL,** as Next Friend of R.F., a Minor, **MARGARET RENEE MASCHSKE,** Individually, and **STEPHEN MICHALSKI,** Individually,

Appellees,

vs.

**STATE OF IOWA, CITY OF WAUKEE, IOWA,** and **CITY OF WEST DES MOINES, IOWA,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.

The plaintiffs seek further review of a court of appeals decision holding the public-duty doctrine barred their tort claims against the government defendants. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT RULING AFFIRMED AND CASE REMANDED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, McDonald, and Oxley, JJ., joined. Appel, J.,

filed a special concurrence. McDermott, J., took no part in the consideration or decision of the case.

Robert M. Livingston (argued) and Kristopher K. Madsen of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellants State of Iowa and City of West Des Moines, Iowa.

Apryl M. DeLange, Alex E. Grasso, and Jessica A. Eglseder of Hopkins & Huebner, P.C., Des Moines, for appellant City of Waukee, Iowa.

Stephen D. Marso (argued), Zachary J. Hermsen, Bryn E. Hazelwonder, and James E. Andersen of Whitfield & Eddy, P.L.C., Des Moines, for appellees.

**WATERMAN, Justice.**

In this appeal, we must decide whether the public-duty doctrine bars tort claims against several government entities. A driver traveling the wrong way on Interstate 80 collided head-on with another vehicle at night, killing all the occupants. The plaintiffs sued the State of Iowa and two municipalities, alleging the defendants negligently designed, constructed, and operated a confusing interchange used by the errant driver. The defendants moved for judgment on the pleadings, which the district court denied. We granted the defendants' application for interlocutory appeal and transferred the case to the court of appeals, which held the public-duty doctrine barred the tort claims. We granted the plaintiffs' application for further review.

On our review, we decline the plaintiffs' invitation to abolish the public-duty doctrine. Accepting the plaintiffs' factual allegations as true, we hold the pleadings state actionable tort claims alleging governmental misfeasance that created a dangerous condition on the government-owned highway interchange that contributed to the fatal accident. These claims survive a facial challenge. For the reasons explained below, we conclude the district court correctly denied the defendants' motion for judgment on the pleadings. We vacate the court of appeals decision and remand the case for further proceedings.

## I. Background Facts and Proceedings.

Because this case involves an appeal from the denial of a motion for judgment on the pleadings, "we assume the truth of the facts stated in the

pleadings." *Griffioen v. Cedar Rapids & Iowa City Ry.*, 914 N.W.2d 273, 278 (Iowa 2018).

The City of Waukee and City of West Des Moines (Cities) began planning an interchange at Interstate 80 and Alice's Road in the early 1990s. "In 2005, the Cities contracted with the State via the Iowa Department of Transportation ("IDOT") for design and construction of the Interchange." The Cities and the State constructed "an Interstate 80 overpass at the site of the Interchange" from 2007 to 2010, and then hired several contractors to construct the interchange.

The Cities and the State chose a diverging diamond interchange (DDI) design for the interchange in January 2013, and construction of the DDI commenced in 2014. This interchange is the first DDI in Iowa. A DDI is unique because it "requires divers to drive on the left side of oncoming traffic for an extended period." And "[b]ecause of the unnatural feel of driving on the left side of oncoming traffic, drivers unfamiliar with the design experience confusion when entering the intersection of the DDI that causes them to move from the right-hand side to the left-hand side of the street." Moreover, "[t]his confusion makes safety features like road markings, lighting, and signage all the more important to the DDI design." The Cities, State, IDOT, and contractors received numerous complaints about the design.

The Cities and the State ordered the contractors to open the interchange "to traffic by the end of 2015." "[T]he Cities, the State, and IDOT opened the Interchange on December 1, 2015." When it initially opened to the public, the interchange "did not comply with contractual requirements . . . or with generally

recognized engineering and safety standards, criteria, and design theories." Safety features, such as lighting, road markings, and signage, were incomplete and were not maintained "in a safe and proper condition." "The Cities, the State, IDOT, [and contractors] continued working on, completing, and remedying these basic safety features and requirements into late 2016." However, "[t]he Interchange remained open to traffic [the] entire time."

In the predawn hours of March 26, 2016, before the safety features and requirements were completed, Benjamin Beary drove "on the interchange, took an incorrect right turn, and began traveling Westbound in the Eastbound lanes on Interstate 80." Two on-duty officers were transporting a prisoner in a police cruiser driving eastbound. Beary's vehicle "collided head-on into the police cruiser." All occupants died at the scene, including Officer Susan Farrell. This lawsuit is brought by her surviving husband, Jesse Farrell, daughter, R.F., and parents, Margaret Renee Maschske and Stephen Michalski (plaintiffs).

On March 21, 2018, the plaintiffs commenced this civil action alleging negligence, nuisance, and premises liability claims against West Des Moines and Waukee.[1] The plaintiffs alleged that the Cities are liable because of their role in opening the interchange prematurely and their failure to close the interchange after discovering dangerous conditions. The Cities filed separate answers, denying the allegations.

---

[1]The plaintiffs also sued Peterson Contractors, Inc., Roadsafe Traffic Systems, Inc., Voltmer Electric, Inc., PAR Electrical Contractors, Inc., MidAmerican Energy Company, and Kirkham, Michael & Associates, Inc., for negligence and nuisance. Those claims are not before us in this appeal.

The plaintiffs then moved for leave to amend the petition to add the State of Iowa as a codefendant. The district court allowed the amendment. West Des Moines and the State filed a joint answer to the amended petition asserting the public-duty doctrine as an affirmative defense. Waukee's answer to the amended petition likewise asserted the public-duty doctrine as a defense.

The government defendants filed a joint motion for judgment on the pleadings under the public-duty doctrine on July 12, 2019. The plaintiffs resisted, arguing the public-duty doctrine does not apply because there was a special relationship between the governmental defendants and Officer Farrell, the governmental defendants committed affirmative acts of negligence (misfeasance), and the governmental defendants induced reliance on their ability to operate the interchange properly. Alternatively, the plaintiffs argued the public-duty doctrine should be discarded because the Iowa Tort Claims Act and the Iowa Municipal Tort Claims Act do not provide for it. All parties supplemented their briefs after our decision in *Breese v. City of Burlington*, 945 N.W.2d 12 (Iowa 2020).

On July 12, 2020, after a hearing, the district court denied the government defendants' motion for judgment on the pleadings. The district court rejected the plaintiffs' argument that on-duty officer Farrell had a special relationship with the defendants that avoids the public-duty defense. But the court agreed with the plaintiffs that "the public duty doctrine does not apply to the affirmative, negligent actions of the governmental defendants." The court further concluded the plaintiffs' allegations of gross negligence "may satisfy the egregious conduct

exception to the public duty doctrine" as recognized by the Rhode Island Supreme Court. The governmental defendants applied for interlocutory appeal, which we granted. We transferred the case to the court of appeals.

On appeal, the government defendants argued the public-duty doctrine requires dismissal because their duties were owed to the public at large without any special relationship with Officer Farrell, and the district court erred by applying the Rhode Island "egregious conduct exception." The defendants contended that the focus should be on the "instrumentality" causing injury—the Beary vehicle—and that any failure to protect Officer Farrell against that third-party driver constituted nonfeasance shielded under the public-duty doctrine, not actionable misfeasance.

The plaintiffs argued the public-duty doctrine should be overruled and, alternatively, that it is inapplicable to their claims. They contended the governmental defendants' actions constituted misfeasance creating a dangerous condition at the interchange they designed, built, and owned, and that the special relationship and egregious conduct exceptions to the public-duty doctrine apply. The plaintiffs advocated against the use of the defendants' instrumentality-of-harm test. The parties filed supplemental briefs after we decided *Fulps v. City of Urbandale*, 956 N.W.2d 469 (Iowa 2021).

The court of appeals reversed and held the public-duty doctrine bars all of the plaintiffs' claims against the government defendants. The court of appeals determined that "the instrumentality starts and ends with an intoxicated Beary

driving on the wrong side of the road into Farrell's vehicle, ultimately killing her."[2]

The plaintiffs applied for further review, arguing the court of appeals erred in its application of the public-duty doctrine and, in the alternative, the public-duty doctrine should be discarded. The governmental defendants resisted. We granted further review.

**II. Standard of Review.**

"We review a district court's ruling on a motion for judgment on the pleadings for the correction of errors at law." *Griffioen*, 914 N.W.2d at 280. "The district court should only grant the motion if the pleadings, taken alone, entitle a party to judgment." *Id.* (quoting *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 633 (Iowa 2002)). "The proper function of a motion for judgment on the pleadings is to test the sufficiency of the pleadings to present appropriate issues for trial." *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 8 (Iowa 2000).

**III. Analysis.**

We first address the plaintiffs' invitation to abandon the public-duty doctrine. We reiterate that the public-duty doctrine remains "alive and well in Iowa." *Breese*, 945 N.W.2d at 19 (quoting *Raas v. State*, 729 N.W.2d 444, 449 (Iowa 2007)). We have repeatedly rejected the same argument that the plaintiffs

---

[2]The court of appeals noted, "At impact, it was estimated that Beary was traveling 102.91 miles per hour in the wrong direction on I-80. At that time, he also had a blood alcohol concentration of .223 and tested positive for marijuana." That information is not in the pleadings, but is found elsewhere in the trial court record. The district court did not consider those facts in its ruling denying the defendants' motion for judgment on the pleadings. We too do not consider facts outside the pleadings in our review of that ruling and conclude that Beary's intoxication and speed are irrelevant to the public-duty determination.

raise again here—that the public-duty doctrine "was supplanted by the enactment of tort claims statutes that partially abrogate sovereign immunity." *Est. of McFarlin v. State*, 881 N.W.2d 51, 59 (Iowa 2016). We confronted and debunked that argument fifteen years ago with considerable analysis in *Raas v. State*, 729 N.W.2d at 447–49. We rejected another invitation to abandon the doctrine five years ago and reiterated that "[w]e distinguish[] the public-duty doctrine from statutory tort immunity: 'Unlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place.' " *McFarlin*, 881 N.W.2d at 59 (quoting *Raas*, 729 N.W.2d at 448); *see also Johnson v. Humboldt County*, 913 N.W.2d 256, 264 (Iowa 2018) ("We concluded that despite the enactment of a tort claims statute that partially abrogated sovereign immunity—just as the Iowa Municipal Torts Claims Act does—the public-duty doctrine was nevertheless 'alive and well in Iowa.' " (quoting *Raas*, 729 N.W.2d at 449)). And we have made clear that "the public-duty doctrine remains good law after our adoption of sections of the Restatement (Third) of Torts." *McFarlin*, 881 N.W.2d at 60.

"Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015). The plaintiffs have advanced no such reason. We decline their invitation to abandon the public-duty doctrine—an invitation we have repeatedly rejected. The fighting issue today is whether the doctrine bars the tort claims pleaded in this case.

"The public-duty doctrine is properly understood as a limit on suing a governmental entity for not protecting the public from harm caused by the activities of a third party." *Fulps*, 956 N.W.2d at 475. The doctrine typically comes into play when two things occur: "the injury to the plaintiff was directly caused or inflicted by a third party or other independent force" and "the plaintiff alleges a governmental entity or actor breached a uniquely governmental duty, usually, but not always, imposed by statute, rule, or ordinance to protect the plaintiff from the third party or other independent force." *Id.* at 473–74. The defendants argue those two things occurred here: a third-party driver (Beary) directly caused Officer Farrell's death, and the plaintiffs allege that the defendants failed to protect her from that third party. Indeed, the court of appeals applied the public-duty doctrine on grounds that Beary's driving caused the fatal accident. But this overlooks the requirement that the governmental entity must have breached a uniquely governmental duty.

Under our controlling precedent, *Fulps* and *Breese,* the public-duty doctrine is inapplicable when the government defendants' affirmative negligence (misfeasance) created a dangerous condition on government-owned property that caused the injury. *See Fulps*, 956 N.W.2d at 470, 475–76 (pedestrian injured on defective city sidewalk); *Breese,* 945 N.W.2d at 15, 21 (cyclist injured on dangerous city bike path). That is, "the governmental entity is simply being held legally responsible for its own property and work." *Fulps*, 956 N.W.2d at 470.

In *Johnson v. Humboldt County*, we foreshadowed today's rejection of a public-duty defense to a dangerous roadway claim. 913 N.W.2d at 266–67. We

held the public-duty doctrine shielded the county from liability for failing to remove a privately owned and erected concrete embankment that was struck by a motorist after he left the road. *Id.* at 258–59, 266. We tellingly observed that

> the limited resources of governmental entities—combined with the many demands on those entities—provide a sound justification for the public-duty doctrine. Cities, counties and the state have to balance numerous competing public priorities, all of which may be important to the general health, safety, and welfare. *This does not mean the same no-duty rule would protect that entity when it affirmatively acts and does so negligently. Cf. Skiff v. State*, 125 Misc.2d 791, 479 N.Y.S.2d 946, 951 (1984) (finding the state could be liable when a vehicle left a state road and traveled along a drainage ditch into an earthen headwall where the ditch was "created by the State" and "constituted a trap or snare"). *That case is not before us today.*

*Id.* (emphasis added) (footnote omitted) (citations omitted). Here, the dangerous interchange was created by the government defendants.

The plaintiffs allege facts we must accept as true: the defendants' confusing DDI design and the act of opening the interchange prematurely without adequate lighting and signage induced Beary to mistakenly drive into oncoming traffic. Thus, according to the pleadings, the government defendants' affirmative negligence created a dangerous condition on their own property that was a cause of the fatal accident. The district court correctly applied *Breese* to reject the public-duty defense, and our subsequent decision in *Fulps* further supports the determination that the government defendants in this case remain liable for their own property and work.

In *Breese*, "we held that the public-duty doctrine did not shield a city from being sued over an allegedly hazardous and defective bike path that continued

onto a sewer box." *Fulps*, 956 N.W.2d at 474 (citing *Breese*, 945 N.W.2d at 15, 21). We concluded:

> The City erected the sewer box and the paved pathway and connected them to each other. They were not instrumentalities built, owned, operated, or controlled by anyone else. They were the City's. Here, a jury could find the City was affirmatively negligent in connecting the public pathway to the sewer box to give the sewer box the appearance that it was part of the public trail system. A jury could find that when the City connected the trail and the sewer box, it needed to take measures either to make the sewer box a safe part of the trail by adding guardrails or to warn pedestrians that the sewer box was not part of the public trail system.

*Breese*, 945 N.W.2d at 21.

In *Fulps*, the plaintiff alleged that she tripped and fell on an uneven sidewalk owned and maintained by the defendant City of Urbandale, which we held was sufficient to avoid a dismissal on public-duty grounds. 956 N.W.2d at 470–71, 476. In both *Fulps* and *Breese*, the government defendant owned the dangerous condition (the sidewalk or bike path) and each defendant's affirmative negligence, or misfeasance, created the danger. The same is true here.

We recognize that neither *Fulps* nor *Breese* involved a third party who directly harmed the victim. Does the additional factor of Beary's reckless driving bring this case within the public-duty doctrine? We think not. To so hold would erroneously treat Beary's errant driving as an intervening and superseding cause and thereby absolve the government defendants of responsibility for the danger they created in their own confusing interchange, contrary to *Fulps* and *Breese*. *See State v. Shears*, 920 N.W.2d 527, 543 (Iowa 2018) (determining intentional collision during a police chase was not an intervening and superseding cause absolving the defendant of liability). Beary's fault is intertwined with the fault of

the government defendants, who allegedly negligently designed and prematurely opened the dangerous interchange used by the errant driver to enter Interstate 80 in the wrong direction. Beary's vehicle and the dangerous interchange it traveled both qualify as an instrumentality of harm. As in many cases, this fatal accident has multiple causes. Would we have dismissed the tort claims against the city under the public-duty doctrine in *Fulps* if a third-party pedestrian tripped on the uneven sidewalk and fell into the plaintiff, knocking her down? No.

We hold that the allegations against the government defendants in the plaintiffs' amended petition are "sufficient to avoid application of the public-duty doctrine" for purposes of adjudicating the motion for judgment on the pleadings. *Fulps*, 956 N.W.2d at 476. We therefore need not address the plaintiffs' argument that Officer Farrell had a special relationship with the government defendants "that would avoid the public-duty doctrine in any event." *Id.* at 476 n.2. Nor do we reach the plaintiffs' argument that their gross negligence claims fall within an egregious conduct exception to the public-duty doctrine. Statutory immunities are not before us either.

**IV. Disposition.**

For these reasons, we vacate the decision of the court of appeals. We affirm the district court ruling denying the defendants' motion for judgment on the pleadings. We remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT RULING AFFIRMED AND CASE REMANDED.**

Christensen, C.J., and Mansfield, McDonald, and Oxley, JJ., join this opinion. Appel, J., files an opinion concurring specially. McDermott, J., takes no part.

#20–1037, *Estate of Farrell v. City of Waukee*

**APPEL, Justice (concurring specially).**

I concur in the result in this case. Unlike the majority, however, I would accept the plaintiff's invitation to revisit the public-duty doctrine. I have generally expressed my views on the question of the validity of the public-duty doctrine after the passage of the Iowa Tort Claims Act in opinions which I have written or joined, *see Fulps v. City of Urbandale*, 956 N.W.2d 469, 476–79 (Iowa 2021) (Appel, J., concurring specially); *Johnson v. Humboldt County*, 913 N.W.2d 256, 267–72 (Iowa 2018) (Wiggins, J., dissenting); *Est. of McFarlin v. State*, 881 N.W.2d 51, 65–70 (Iowa 2016) (Hecht, J., concurring in part and dissenting in part). I incorporate the reasoning of those opinions here.

It is true that the majority opinions in *Fulps*, *Breese*, and this case may limit application of the sprawling public-duty doctrine to some degree. *See Fulps*, 956 N.W.2d at 479; *Breese v. City of Burlington*, 945 N.W.2d 12, 20–21 (Iowa 2020). Nonetheless, I think that unworkable factual hairsplitting regarding the application of the public-duty doctrine seems inevitable unless the doctrine is abandoned. I would return to the approach of the never-overruled case of *Adam v. State*, 380 N.W.2d 716, 724 (Iowa 1986) (en banc) (rejecting public-duty doctrine with regard to municipalities), and hold that the passage of the Iowa Tort Claims Act was the death knell of public-duty doctrine in Iowa.